1  BRYAN A. MERRYMAN (SBN 134357)
   bmerryman@whitecase.com
2  RACHEL J. FELDMAN (SBN 246394)
   rfeldman@whitecase.com
3  JULIAN A. LAMM (SBN 284637)
   jlamm@whitecase.com
4  SCOTT T. EISEN (SBN 300020)
   seisen@whitecase.com
5  WHITE & CASE LLP
   633 W. Fifth Street, Suite 1900
6  Los Angeles, CA 90071-2007
   Telephone: (213) 620-7700
7  Facsimile: (213) 452-2329

8  Attorneys for Defendant
   TIME WARNER CABLE INC.
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                     WESTERN DIVISION

13

14  National Association of African-        No. 2:15-cv-01239-TJH-MAN
    American Owned Media, a California
15  limited liability company; and          **DEFENDANT TIME WARNER
    Entertainment Studios Networks, Inc., a **CABLE INC.'S NOTICE OF
16  California corporation,                  MOTION AND MOTION TO
                                             DISMISS COMPLAINT
17              Plaintiffs,                   PURSUANT TO RULE 12(B)(6)**

18         v.                                Date: June 8, 2015
                                             Time: UNDER SUBMISSION
19  Comcast Corporation, a Pennsylvania      Courtroom: 17
    corporation; Time Warner Cable Inc., a   Judge: Hon. Terry J. Hatter, Jr.
20  Delaware corporation; National
    Association for the Advancement of
21  Colored People, a New York
    corporation; National Urban League,
22  Inc., a New York corporation; Al
    Sharpton, an individual; National Action
23  Network, Inc., a New York corporation;
    Meredith Attwell Baker, an individual;
24  and DOES 1 through 10, inclusive,

25              Defendants.

26

27

28

1        NOTICE IS HEREBY GIVEN that on June 8, 2015, in Courtroom 17 of the

2  United States District Court for the Central District of California, located at 312

3  North Spring Street in Los Angeles, California, defendant Time Warner Cable Inc.

4  ("TWC") will and hereby does move this Court for an order dismissing plaintiffs

5  National Association of African-American Owned Media ("NAAAOM") and

6  Entertainment Studios Networks, Inc.'s ("ESN") (collectively "Plaintiffs")

7  Complaint against TWC in its entirety, with prejudice, or, in the alternative to

8  dismiss or strike Plaintiffs' request for injunctive relief and dismiss NAAAOM for

9  lack of standing.

10        The motion seeks dismissal of the Complaint pursuant to Federal Rule of

11  Civil Procedure 12(b)(6) on the following grounds:  (1) the Complaint fails to state

12  a claim on which relief can be granted because Plaintiffs fail to plead sufficient

13  facts that TWC engaged in intentional racial discrimination; and (2) the Complaint

14  against TWC is barred by the First Amendment.  Alternatively, the Court dismiss or

15  strike Plaintiffs' request for injunctive relief because that request does not satisfy

16  the requirements of specificity and detail in Federal Rule of Civil Procedure 65(d),

17  and, therefore, dismiss NAAAOM for lack of standing.

18        TWC bases this motion on this notice of motion and motion, the

19  memorandum of points and authorities, and such additional argument as may be

20  presented at or before the hearing on this motion.

21        This motion is made following the conference of counsel pursuant to Local

22  Rule 7-3, which took place on April 9, 2015.

23

24  Dated:  April 24, 2015           WHITE & CASE LLP

25

26                  By:     */s/ Bryan A. Merryman*
                          Bryan A. Merryman

27                  Attorneys for Defendant
                  TIME WARNER CABLE INC.

28

- 2 -

Americas 90542239

## **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ........................................................................................ 1

II.  ALLEGATIONS AGAINST TWC ............................................................ 2

III. LEGAL STANDARD ................................................................................ 3

IV.  THE COURT SHOULD DISMISS TWC .................................................. 3

    A.   Plaintiffs Do Not Plead Facts Sufficient to State a Claim of
        Racial Discrimination Under 42 U.S.C. § 1981 .............................. 4

        1.   The Complaint does not contain a single allegation of
            purposeful discriminatory conduct by TWC .............................. 5

        2.   Plaintiffs have no basis to impute Comcast's alleged
            practices on TWC ....................................................................... 7

    B.   Plaintiffs' Section 1981 Claim is Barred By the First
        Amendment ...................................................................................... 8

    C.   At a Minimum, the Court Should Dismiss or Strike the Prayer
        for Injunctive Relief and Dismiss NAAAOM For Lack of
        Standing ......................................................................................... 10

V.   CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................... 3, 4, 6, 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................ 3, 4, 7

*In re Century Aluminum Co. Sec. Litig.,*
429 F.3d 1104 (9th Cir. 2013) ................................................................6

*Claybrooks v. Am. Broad. Companies, Inc.,*
898 F. Supp. 2d 986, 989 (M.D. Tenn. 2012)..........................................9

*Comcast Cable Commc'ns, LLC v. FCC,*
717 F.3d 982 (D.C. Cir. 2013) ..........................................................9, 10

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,*
2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003) ..........................................11

*Domino's Pizza, Inc. v. McDonald,*
546 U.S. 470 (2006)................................................................................4

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) ..................................................................6

*Evans v. McKay,*
869 F.2d 1341 (9th Cir. 1989) ............................................................4, 5

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,*
458 U.S. 375 (1982) ......................................................................4, 6, 7, 8

*In re Gilead Scis. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ................................................................3

*Hamilton v. Brown,*
630 F.3d 889 (9th Cir. 2011) ..................................................................3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
515 U.S. 557 (1995)................................................................................9

*Imagineering, Inc. v. Kiewit Pac. Co.,*
976 F.2d 1303 (9th Cir. 1992) ................................................................4

*McDermott v. Ampersand Publ'g, LLC,*
593 F.3d. 950 (9th Cir. 2010)............................................................9, 10

*Mercer v. Southwest Airlines Co.,*
2014 WL 7206881 (N.D. Cal. Dec. 18, 2014)........................................5

*MGM Studios, Inc. v. Grokster, Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................................10

*Molski v. Kahn Winery,*
    381 F. Supp. 2d 1209 (C.D. Cal. 2005) ................................................11

*Morgan v. Safeway Stores, Inc.,*
    884 F.2d 1211 (9th Cir. 1989) ................................................................8

*Newcal Indus., Inc. v. Ikon Office Solution,*
    513 F.3d 1038 (9th Cir. 2008) ................................................................5

*Payne v. Travenol Labs., Inc.,*
    565 F.2d 895 (5th Cir. 1978) ................................................................10

*Pflaum v. Town of Stuyvesant,*
    2014 WL 295759 (N.D.N.Y. Jan. 27, 2014) ..........................................7

*Poirier v. City of N. Hollywood,*
    2011 WL 6046908 (C.D. Cal. May 24, 2011) ........................................4

*Snyder v. Phelps,*
    131 S. Ct. 1207 (2011) ..........................................................................9

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053 (9th Cir. 2004) ..............................................................11

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994)................................................................................9

*United States v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ..................................................................3

*Vaughn v. World Sav. Bank, FSB,*
    2013 WL 1876449 (C.D. Cal. Feb. 22, 2013) ......................................5

## FEDERAL CONSTITUTION

U.S. Const. amend. I ................................................................ passim

## FEDERAL STATUTES

42 U.S.C. § 1981 ..................................................................... passim

## FEDERAL RULES

Fed. R. Civ. Proc. 12(b)(6)..............................................................3, 12

Fed. R. Civ. Proc. 65(d) ..................................................................10

- iii -

1  **I.     INTRODUCTION**

2        Plaintiffs Entertainment Studios Networks, Inc. ("ESN") and the National

3  Association of African-American Owned Media ("NAAAOM") (collectively,

4  "Plaintiffs") accuse defendant Time Warner Cable Inc. ("TWC") of civil rights

5  violations because TWC chose not to carry ESN's programming on its cable

6  systems.  But ESN's true purpose here, in the guise of a racial discrimination

7  lawsuit, is to further its own private commercial interests.  ESN attempts to exploit

8  two mergers pending regulatory review, as it has not only sued TWC but also three

9  other buyers of cable programming that are undergoing merger reviews (Comcast in

10 this lawsuit, and AT&T and DirecTV in a similar lawsuit filed in this District on

11 December 2, 2014).  Plaintiffs are improperly attempting to use the judicial system

12 to leverage their way into the cable market.

13        Plaintiffs' section 1981 racial discrimination claim is baseless.  TWC made a

14 legitimate business decision not to carry ESN's programming—a decision protected

15 by its free speech rights under the First Amendment.  The Complaint does not

16 include a single allegation of intentional discrimination or racial animus against

17 TWC, its directors, executives, or employees.  Instead, Plaintiffs conclusorily allege

18 that TWC delegated channel carriage decisions to Comcast and, therefore, "adopted

19 and agreed" with Comcast's allegedly "racist policies."  But, again, the Complaint

20 does not include a single fact to support that conclusory allegation.  The Court

21 should dismiss TWC because Plaintiffs do not state a claim for racial discrimination

22 that is plausible on its face.

23        Moreover, regardless of the sufficiency of the allegations, the First

24 Amendment bars Plaintiffs' claim against TWC because channel carriage decision-

25 making is a form of speech protected by the First Amendment.  ESN cannot use

26 section 1981 as a vehicle to challenge TWC's editorial discretion in selecting

27 channels.  For all of these reasons, the Court should dismiss Plaintiffs' single

28 section 1981 racial discrimination claim against TWC with prejudice.

## II.   ALLEGATIONS AGAINST TWC

Plaintiff ESN self-proclaims to be the "only 100% African American-owned video programming producer and multi-channel operator/owner in the United States." Compl. ¶ 35. ESN owns and operates seven television channels: Cars.TV; Comedy.TV; ES.TV; MyDestination.TV; Recipe.TV; Pets.TV; and Justice Central. *Id.* ¶ 38, Ex. A. ESN alleges that its channels have been "shut out" from doing business with cable providers. *Id.* ¶ 52. As a result, ESN and NAAAOM filed the Complaint against TWC, among other defendants, alleging racial discrimination in contracting under section 1981. Notably, ESN has not sued any cable providers that are not currently under merger review.[1]

The allegations against TWC are scant and conclusory. The Complaint consists of 124 paragraphs, but allegations against TWC only appear in two paragraphs. Plaintiffs' allegations against TWC are as follows:

- TWC "delegated channel carriage decision-making authority to Comcast and adopted and agreed with Comcast's racist policies and practices." Compl. ¶ 56.

- An unnamed TWC board member told ESN that Comcast's David Cohen must expressly approve any channels to be launched on TWC's platform. *Id.*

- ESN held "advanced negotiations" regarding its channel lineup with TWC executives Melinda Witmer and Robert Marcus. *Id.* ¶ 57.

- At the order of Comcast, TWC declined to carry any of ESN's channels on its platform. *Id.*

Plaintiffs do not allege intentional discrimination against TWC. The Complaint does not allege a single discriminatory motive, statement, or act by TWC, its executives, or employees. Instead, Plaintiffs spend much of their Complaint alleging conspiracies between Comcast and the non-TWC defendants,

---

[1] The announcement today, months after Plaintiffs filed their Complaint, that the proposed merger between Comcast and TWC is terminated does nothing to change the clear motivation behind Plaintiffs' lawsuit and its lack of merit.

1  civil rights organizations and leaders, such as the NAACP, the National Urban

2  League, the National Action Network, and Al Sharpton.[2]  Compl. ¶¶ 59-91.

3  **III.   <u>LEGAL STANDARD</u>**

4  The focus of any Rule 12(b)(6) motion to dismiss is the complaint.  *United*

5  *States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).  In considering

6  whether a complaint states a claim, a court must accept as true all material factual

7  allegations.  *Hamilton v. Brown*, 630 F.3d 889, 892-93 (9th Cir. 2011).  The court,

8  however, need not accept as true "allegations that are merely conclusory,

9  unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis.*

10  *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  "A pleading that offers 'labels and

11  conclusions' or 'a formulaic recitation of the elements of the cause of action will

12  not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

13  *Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders

14  'naked assertion[s]' devoid of 'further factual enhancement.'"  *Twombly*, 550 U.S.

15  at 555.  "While legal conclusions can provide the framework of a complaint, they

16  must be supported by factual allegations."  *Iqbal,* 556 U.S. at 679.  A motion to

17  dismiss should be granted when the complaint fails to "contain sufficient factual

18  matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Id.*

19  at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when

20  the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference that the defendant is liable for the misconduct alleged."  *Id.*

22  **IV.   <u>THE COURT SHOULD DISMISS TWC</u>**

23  The Court should dismiss Plaintiffs' section 1981 claim against TWC

24  without leave to amend for two independent reasons.  First, Plaintiffs fail to allege

25  any *facts* supporting a plausible claim of intentional discrimination against TWC.

26  This is a case motivated purely by Plaintiffs' desire for private commercial gain,

27  masked behind an empty claim of racial discrimination in contracting.  The

28  [2] Those facts are set forth in Comcast's motion to dismiss and are not restated here.

- 3 -

deficiencies in the Complaint are glaring: Plaintiffs rely exclusively on "conclusory" and "unadorned" assertions that *Iqbal* and *Twombly* held are insufficient as a matter of law.

Second, the Complaint fails to state a claim as a matter of law because TWC's channel carriage decisions are protected speech under the First Amendment. Plaintiffs cannot use a section 1981 claim to manipulate TWC's editorial discretion in selecting channels for ESN's platform and require TWC to contract with and carry ESN's channels. As such, the First Amendment bars Plaintiffs' single section 1981 claim against TWC.

### A.    Plaintiffs Do Not Plead Facts Sufficient to State a Claim of Racial Discrimination Under 42 U.S.C. § 1981

Section 1981 guarantees "all persons" the right to "make and enforce contracts." 42 U.S.C. § 1981. To state a claim under section 1981, the plaintiff must plead: (1) he or she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discriminatory conduct prevented the creation of a contractual relationship or impaired an existing contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Poirier v. City of N. Hollywood*, 2011 WL 6046908, at *2 (C.D. Cal. May 24, 2011).

Stating a claim under section 1981 requires allegations of intentional discrimination. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) (section 1981 "reaches only purposeful discrimination"); *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989) ("plaintiffs must show intentional discrimination on account of race"). A plaintiff cannot rely on a disparate impact theory to prove a section 1981 case. *Gen. Bldg. Contractors*, 458 U.S. at 389-91.

Under section 1981, a plaintiff must allege *facts* that would support an inference that the defendant intentionally and purposely discriminated against him or her. *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992),

- 4 -

1   abrogated on other grounds by *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d

2   1038 (9th Cir. 2008); *see also Evans*, 896 F.2d at 1345 (noting overt acts coupled

3   with racial discriminatory remarks are sufficient to state a claim); *Mercer v.*

4   *Southwest Airlines Co.*, 2014 WL 7206881, at *5 (N.D. Cal. Dec. 18, 2014)

5   (finding an inference of intentional discrimination where the complaint included

6   specific facts alleging: hostile statements against plaintiff; plaintiff was "singled

7   out" and treated differently than persons of other races; and there was no apparent

8   basis for treating plaintiff differently).  Conclusory allegations do not suffice.

9   *Vaughn v. World Sav. Bank, FSB*, 2013 WL 1876449, at *4 (C.D. Cal. Feb. 22,

10  2013) (dismissing a Section 1981 claim because it did not include facts alleging any

11  racial or other discriminatory animus).

12       Although Plaintiffs allege they are part of a racial minority (African

13  American) and identified an unconsummated channel carriage contract opportunity

14  with TWC, the Complaint is fundamentally flawed because it does not allege any

15  facts raising even an inference of purposeful racial discrimination by TWC.  In fact,

16  Plaintiffs appear to implicate TWC solely by imputing Comcast's alleged conduct

17  on TWC.  But Plaintiffs similarly fail to allege the facts required to hold TWC

18  "vicariously liable" for Comcast's alleged practices.

19       **1.    The Complaint does not contain a single allegation of**

20       **purposeful discriminatory conduct by TWC**

21       Conspicuously absent from the Complaint are any factual allegations of

22  discriminatory intent by anyone associated with TWC that are necessary to state a

23  claim under section 1981.  For example, Plaintiffs do not allege a single racially

24  discriminatory overt act or statement by any TWC executive or employee in the

25  contracting process.  Plaintiffs allege they held "advanced negotiations" with

26  Melinda Witmer and Robert Marcus, but they do not allege a single racially

27  discriminatory act by either of these individuals.

28       Nor do Plaintiffs allege any facts that would support an inference that TWC

- 5 -

1  intentionally and purposely discriminated against ESN.  The Complaint does not

2  allege that TWC holds a racial bias or preference for media companies that are not

3  owned by African Americans.  To the contrary, Plaintiffs admit that TWC carries

4  other channels that are or were predominately owned by African Americans, such

5  as the Africa Channel and BET.  Nor does the Complaint allege that TWC

6  purposely presented ESN with uniquely disadvantageous contract terms.  Finally,

7  the Complaint does not allege that TWC treated similarly situated media companies

8  that are not owned by African Americans differently.[3]

9        The more plausible explanation, based on Plaintiffs' own allegations, is that

10  after "advanced negotiations," TWC made a legitimate business decision in

11  declining to carry ESN's channels.[4]  Nothing in the Complaint indicates that race

12  was a factor in TWC's decision.  Indeed, at the pleading stage, "[w]hen considering

13  plausibility, courts must also consider an 'obvious alternative explanation' for

14  defendant's behavior."  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*,

15  751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682).  Plaintiffs must

16  allege "facts tending to exclude the possibility that the alternative explanation is

17  true."  *In re Century Aluminum Co. Sec. Litig.*, 429 F.3d 1104, 1108 (9th Cir.

18  2013).  Here, the Complaint misses the mark.  The only plausible explanation from

19  the face of the Complaint is that TWC made an objective business decision in

20  declining to carry ESN's channels.

21

22  [3] Plaintiffs cite various percentages and statistics in the Complaint.  *See* Compl. ¶¶

23  55, 102, 106.  Regardless of their veracity, statistics and percentages have no
bearing on the claim against TWC—a disparate impact theory is insufficient to state

24  a section 1981 claim.  *Gen. Bldg. Contractors*, 458 U.S. at 391.  In this case, the
statistics and comparisons are particularly disingenuous.  Plaintiffs attempt to

25  exclude other media companies with African-American identity, and fabricate an
aura of discrimination, by narrowly defining themselves as "100% African-

26  American owned."  As the Complaint notes, however, TWC contracts with
companies with an African-American identity.  Compl. ¶ 29.

27  [4] This inference is further supported by Exhibit A to the Complaint, as none of the

28  channels owned by ESN appears to have novel (or profitable) content.

- 6 -

1
2

### 2. Plaintiffs have no basis to impute Comcast's alleged practices on TWC

3      Instead of alleging direct discriminatory acts against TWC, Plaintiffs seek to

4   exploit the pending merger between Comcast and TWC and attempt to pin

5   Comcast's alleged discriminatory contracting practices on TWC.  In doing so,

6   Plaintiffs make a single allegation: an unnamed TWC board member told ESN that

7   TWC delegated its channel carriage responsibilities to Comcast, in violation of the

8   antitrust "gun jumping" rules.[5]  Compl. ¶ 56.  The Court should ignore this vague

9   and conclusory allegation because it is a prime illustration of a "'naked assertion'

10  devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting

11  *Twombly*, 550 U.S. at 555).  The Complaint does not allege which TWC board

12  member made the statement, which ESN employee heard the statement, or even

13  when and in what context the board member allegedly made the statement.[6]  *See,*

14  *e.g., Pflaum v. Town of Stuyvesant*, 2014 WL 295759, at *7 (N.D.N.Y. Jan. 27,

15  2014) (finding, under the circumstances, a single statement by an "unnamed

16  person" was "extremely vague" and failed to plausibly allege a claim).

17      Regardless of whether the Court accepts this single allegation, the Complaint

18  remains deficient for two reasons.  First, as a threshold matter, the underlying

19  allegations against Comcast are insufficient under *Iqbal* and fail to state a claim for

20  racial discrimination against Comcast and, therefore, by extension, those allegations

21  fail to state a claim against TWC.  Second, Plaintiffs fail to plead the necessary

22  facts to hold TWC liable for Comcast's alleged contracting practices.  As noted

23  above, section 1981 reaches only intentional and purposeful discrimination.

24  *General Bldg. Contractors*, 458 U.S. at 389.  In order to state a section 1981 claim

---

25
26
[5] Although Plaintiffs mention a violation of antitrust law, they assert no horizontal conspiracy claim, under section 1 of the Sherman Act, against either TWC or Comcast.

27
28
[6] It may also be the case that an actual TWC board member did not make this statement.  TWC asked counsel for Plaintiffs for the name of this alleged board member, but Plaintiffs' counsel refused to identify this person.

Americas 90542239                                    DEFENDANT TWC'S MOTION TO DISMISS

against a defendant for the discriminatory actions of a third party (in this case,
Comcast), the plaintiff must allege an *agency relationship* between the defendant
and the third party (TWC and Comcast). *Id.* at 393. The principle-agent
relationship requires "consent by one person to another to act on his behalf and
subject to his control." *Id.* at 392; *see also Morgan v. Safeway Stores, Inc.*, 884
F.2d 1211, 1214 (9th Cir. 1989) (requiring affirmative, active participation in a
third party program to find discrimination under an agency theory).

Plaintiffs make no *factual* allegations of an agency relationship between
TWC and Comcast. Without alleging an agency relationship, TWC cannot be held
liable for the alleged discriminatory practices of a third party. Neither element of
the agency relationship is alleged: it is unclear whether TWC consented to Comcast
acting on its behalf or vice versa. Nor is there any indication of either entity having
"control over an agent" (*i.e.*, whether TWC controls Comcast or vice versa). A
single conclusory allegation attempting to exploit the previously pending merger is
insufficient to link TWC and Comcast as a single entity because federal law
requires that the acquiring entity remain independent until the merger passes
regulatory approval. Indeed, TWC and Comcast remained separate entities when
regulatory approval of the merger was pending. In sum, the Complaint's few
ambiguous allegations against TWC cannot survive this motion to dismiss.

Plaintiffs' sparse allegations as they pertain to TWC lack any factual
foundation. The Complaint, therefore, fails to state a claim against TWC.

### B.    Plaintiffs' Section 1981 Claim is Barred By the First Amendment

In addition to Plaintiffs' failure to sufficiently plead a claim of racial
discrimination, the single section 1981 claim against TWC should be dismissed
because the First Amendment bars it. Even though anti-discrimination laws are of
high importance, ESN cannot use a section 1981 claim to override cable channel
carriage decisions and thereby limit TWC's First Amendment rights. Even laws
that advance important social policy objectives, like anti-discrimination laws, may

- 8 -

DEFENDANT TWC'S MOTION TO DISMISS

1    not, consistent with the First Amendment, be used to regulate protected speech. *See*

2    *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 580

3    (1995) (discrimination laws yield to the First Amendment where they seek to alter

4    protected speech); *see also Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2011) (stating

5    the First Amendment can serve as a defense in civil litigation).

6        "There can be no disagreement on an initial premise: Cable programmers and

7    cable operators engage in and transmit speech, and they are entitled to the

8    protection of the speech and press provisions of the First Amendment." *Turner*

9    *Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994).  "Just as a newspaper exercises

10   editorial discretion over which articles to run, a video programming distributor

11   exercises editorial discretion over which video programming networks to carry and

12   at what level of carriage." *Comcast Cable Commc'ns, LLC v. FCC*, 717 F.3d 982,

13   993 (D.C. Cir. 2013) (Kavanaugh, J., concurring).  TWC's decision regarding

14   whether to carry ESN's channels is protected under the First Amendment. *See, e.g.,*

15   *id.* at 994 (noting the First Amendment protected Comcast's decision to carry the

16   Golf Channel, but not the Tennis Channel).

17       Another district court recently applied the First Amendment defense in a

18   similar context.  In *Claybrooks v. American Broadcasting Companies, Inc.*, the

19   plaintiffs filed a section 1981 action alleging racial discrimination in the casting of

20   ABC's shows *The Bachelor* and *The Bachelorette*.  898 F. Supp. 2d 986, 989 (M.D.

21   Tenn. 2012).  The court dismissed the claim because the First Amendment protects

22   producers' rights to unilaterally control the message and the creative content of

23   their shows.  *Id.* at 1000.

24       In a labor discrimination case, the Ninth Circuit held that a newspaper

25   publisher could not be forced to re-hire specific editors and, thus, "relinquish

26   editorial control over the content of its news reports." *McDermott v. Ampersand*

27   *Publ'g, LLC*, 593 F.3d 950, 958 (9th Cir. 2010).  "To the extent the publisher's

28   choice of writers affects the expressive content of its newspaper, the First

- 9 -

1    Amendment protects that choice." *Id*. at 962.

2         The same logic and result apply here in the context of cable providers.

3    Plaintiffs' section 1981 claim would impermissibly transform the editorial control

4    and content of TWC's channel platform. Plaintiffs' attempted interference with

5    TWC's editorial discretion cannot stand. Plaintiffs cannot tell TWC how to

6    exercise its editorial discretion over what channels to carry "any more than the

7    Government [and private actors under its guise] can tell Amazon or Politics and

8    Prose or Barnes & Noble what books to sell; or tell the *Wall Street Journal* or

9    *Politico* or the *Drudge Report* what columns to carry; or tell the MLB Network or

10   ESPN or CBS what games to show." *Comcast Cable Commc'ns*, 717 F.3d at 994.

11        Plaintiffs' lawsuit is a non-permissible use of the judicial system in an

12   attempt to force TWC to contract with and carry ESN's channels and an assault on

13   TWC's First Amendment rights. The Court should dismiss Plaintiffs' section 1981

14   claim against TWC.

15        **C.    At a Minimum, the Court Should Dismiss or Strike the Prayer for**

16             **Injunctive Relief and Dismiss NAAAOM For Lack of Standing**

17        Plaintiffs' prayer for injunctive relief is improper. As a result, NAAAOM

18   has no stake in this litigation and should be dismissed for lack of standing.

19        The injunctive relief sought by NAAAOM and ESN does not satisfy the

20   requirements of specificity and detail in Federal Rule of Civil Procedure 65(d).

21   Requesting an injunction that merely restates a statute and asks a party to "stop

22   discriminating" is too general and cannot be sustained. Fed. R. Civ. P. 65(d) ("an

23   injunction . . . must . . . describe in reasonable detail . . . the act or acts sought to be

24   restrained"); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) (an

25   injunction that merely prohibits discrimination based on religion and natural origin

26   "cannot be sustained"); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197,

27   1226 (C.D. Cal. 2007) ("blanket injunctions to obey the law are disfavored").

28        Plaintiffs seek injunctive relief "prohibiting Comcast from discrimination

- 10 -

1    against 100% African American-owned media companies, including Entertainment

2    Studios, based on race." That's it. This simple "obey the law" injunction is

3    invalid. Moreover, with the proposed merger terminated and Plaintiffs unable to

4    continue to attempt to tie Comcast's alleged conduct to TWC prospectively, there is

5    no basis for a request for injunctive relief against TWC.

6         As this is NAAAOM's only prayer for relief, once dismissed or stricken,

7    NAAAOM has no purpose or stake in this litigation and should be dismissed for

8    lack of standing. NAAAOM cannot assert a section 1981 claim on its own behalf

9    because it does not allege that it sought to contract with TWC. *See Thinket Ink*

10   *Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004).

11   NAAAOM also lacks standing due to prudential concerns. NAAAOM is a plaintiff

12   in this action only as part of ESN's transparent, but flawed, attempt "to lend an aura

13   of legitimacy" to ESN's claims. *Molski v. Kahn Winery*, 381 F. Supp. 2d 1209,

14   1211 (C.D. Cal. 2005).

15        Despite NAAAOM's claim that it "was created and is working to obtain for

16   100% African-American owned media the same contracting opportunities as their

17   white counterparts," it is, in reality, a reiteration of ESN, working to obtain a

18   commercial benefit for ESN only. After all, ESN boasts it is the "*only* 100%

19   African-American owned video programming producer and multi-channel

20   operator/owner in the United States." Compl. ¶¶ 2, 35, 87. ESN is clearly in the

21   best position to assert its own claims and further its own commercial interests. In

22   instances like this one, the organizational plaintiff should be dismissed from the

23   case. *See id.* (dismissing the organizational plaintiff because it sought the same

24   relief as the individual plaintiff); *Disabled in Action of Metro. N.Y. v. Trump Int'l*

25   *Hotel & Tower*, 2003 WL 1751785, at *10 (S.D.N.Y. Apr. 2, 2003) (dismissing the

26   organizational plaintiff because the individual plaintiffs were better suited to bring

27   their claims, and the organization was unnecessary to the litigation).

28        Because NAAAOM does not request proper relief and ESN is prudentially in

- 11 -

1    a better position to assert its own claims, the Court should, at a minimum, dismiss

2    NAAAOM for lack of standing.

3    **V.      CONCLUSION**

4          Plaintiffs fail to allege that TWC committed a single act of intentional

5    discrimination, and, instead, plead vague facts, that even if true would not state a

6    section 1981.  In addition, the First Amendment bars Plaintiffs' claim because

7    channel carriage decisions are protected speech.  Therefore, the Court should

8    dismiss the Complaint against TWC pursuant to Rule 12(b)(6) for failure to state a

9    claim upon which relief can be granted.  Alternatively, the Court should dismiss or

10   strike Plaintiffs' prayer for injunctive relief and dismiss NAAAOM for lack of

11   standing.

12

      Dated:  April 24, 2015                    WHITE & CASE LLP

13

14

                                                By:  _____ */s/ Bryan A. Merryman* _____
15                                                    Bryan A. Merryman

16                                              Attorneys for Defendant
                                                TIME WARNER CABLE INC.
17

18

19

20

21

22

23

24

25

26

27

28

- 12 -