1  LOUIS R. MILLER (State Bar No. 54141)
   smiller@millerbarondess.com
2  AMNON Z. SIEGEL (State Bar No. 234981)
   asiegel@millerbarondess.com
3  LAUREN R. WRIGHT (State Bar No. 280809)
   lwright@millerbarondess.com
4  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:  (310) 552-4400
6  Facsimile:   (310) 552-8400

7  Attorneys for Plaintiffs

8           UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | National Association of African-      | **CASE NO. 2:15-cv-01239-TJH-MAN**
   | American Owned Media, a California     |
12 | limited liability company; and         |
   | Entertainment Studios Networks, Inc., a | **PLAINTIFFS' OPPOSITION TO**
13 | California corporation,                 | **DEFENDANT TIME WARNER**
   |                                         | **CABLE INC.'S MOTION TO**
14 |            Plaintiffs,                  | **DISMISS COMPLAINT**
   |                                         | **PURSUANT TO RULE 12(B)(6)**
15 |        v.                               |
   |                                         | [Request for Judicial Notice and
16 | Comcast Corporation, a Pennsylvania     | Declaration of Mark DeVitre filed
   | corporation; Time Warner Cable Inc., a  | concurrently herewith]
17 | Delaware corporation; National          |
   | Association for the Advancement of      | Judge:  Hon. Terry J. Hatter, Jr.
18 | Colored People, a New York              | Date:   June 8, 2015
   | corporation; National Urban League,     | Time:   UNDER SUBMISSION
19 | Inc., a New York corporation; Al        | Crtrm.:  17
   | Sharpton, an individual; National       |
20 | Action Network, Inc., a New York        |
   | corporation; Meredith Attwell Baker, an |
21 | individual; and DOES 1 through 10,      |
   | inclusive,                              |
22 |                                         |
23 |            Defendants.                  |

24

25

26

27

28

254548.6

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 3

    A.    The Television Industry And Comcast's Failed Merger With TWC .................................................................................................. 3

    B.    NAAAOM ....................................................................................... 3

    C.    ESN .................................................................................................. 4

    D.    TWC's Refusal To Contract With ESN For Channel Carriage ............. 5

III.  LEGAL STANDARD .............................................................................. 5

IV.   ARGUMENT ........................................................................................... 6

    A.    Section 1981 Broadly Prohibits Race Discrimination In Contracting ....................................................................................... 6

    B.    The Complaint Alleges Intentional Discrimination By TWC ............... 7

    C.    Plaintiffs Need Not Plead An Agency Relationship Between TWC And Comcast ......................................................................... 9

    D.    TWC Attempts To Impose Impermissibly High Burdens At The Pleading Stage ......................................................................... 11

        1.    Plaintiffs need not Show that TWC Treats Non-African American-Owned Similarly Situated Entities Differently ........ 11

        2.    Plaintiffs are not Required to Exclude Alternative Explanations for TWC's Refusal to Contract with ESN ........... 13

    E.    The First Amendment Does Not Insulate TWC From Liability .......... 16

    F.    Plaintiffs' Request for Injunctive Relief Should Not Be Dismissed ........................................................................................ 18

    G.    NAAAOM Has Standing to Pursue Injunctive Relief ...................... 19

V.    IF THE COURT GRANTS TWC'S MOTION, PLAINTIFFS SHOULD BE ALLOWED LEAVE TO AMEND .......................................... 20

VI.   CONCLUSION ...................................................................................... 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................6, 11, 12

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003).................................................20

*Civil Rights Cases*, 109 U.S. 3 (1883) ..........................................6

*Claybrooks v. Am. Broad. Cos., Inc.*,
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ...........................17, 18

*Clemons v. Keller Williams Realty, Inc.*,
    2012 WL 994623 (C.D. Cal. Mar. 23, 2012) .........................13

*Del Monte Int'l GmbH v. Del Monte Corp.*,
    995 F. Supp. 2d 1107 (C.D. Cal. 2014)....................................6

*Faith Action for Cmty. Equity v. Hawaii*,
    2014 WL 1691622 (D. Haw. Apr. 28, 2014) .........................11

*Gathright v. City of Portland, Or.*,
    439 F.3d 573 (9th Cir. 2006)...................................................18

*General Building Contractors Association, Inc. v. Pennsylvania*,
    458 U.S. 375 (1982) ...............................................................10

*Haley v. TalentWise, Inc.*,
    2014 WL 1648480 (W.D. Wash. Apr. 23, 2014)....................16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995) .........................................................16, 17

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013).................................................15

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................10

*Jankey v. Beach Hut*,
    2005 WL 5517235 (C.D. Cal. Dec. 8, 2005) .........................20

*Jones v. Alfred H. Mayer Co.*,
    392 U.S. 409 (1968) .................................................................6

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Lanier v. Clovis Unified Sch. Dist.*,
    2010 WL 3733953 (E.D. Cal. Sept. 20, 2010) .................................................. 13

*Lindsay v. Yates*,
    498 F.3d 434 (6th Cir. 2007) ................................................................. 10

*Lindsey v. SLT Los Angeles, LLC*,
    447 F.3d 1138 (9th Cir. 2005) ........................................................... 12, 16

*Maduka v. Sunrise Hosp.*,
    375 F. 3d 909 (9th Cir. 2004) ............................................................... 11

*McDermott v. Ampersand Publ'g, LLC*,
    593 F.3d 950 (9th Cir. 2010) ............................................................... 17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ..................................................................... 12, 16

*McGinest v. GTE Serv. Corp.*,
    360 F.3d 1103 (9th Cir. 2004) .............................................................. 12

*Morgan v. Safeway Stores, Inc.*,
    884 F.2d 1211 (9th Cir. 1989) .............................................................. 10

*N.A.A.C.P. v. Ameriquest Mortg. Co.*,
    635 F. Supp. 2d 1096 (C.D. Cal. 2009) ...................................................... 19

*Nabozny v. Podlesny*,
    92 F.3d 446 (7th Cir. 1996) ................................................................ 8

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*,
    2010 WL 2198203 (N.D. Cal. May 28, 2010) ................................................... 12

*Pac. Shores Props., LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) .............................................................. 12

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980) ........................................................................ 16

*Sheppard v. David Evans & Assocs.*,
    694 F.3d 1045 (9th Cir. 2012) .......................................................... 11, 12

*Small v. Feather River Coll.*,
    2011 WL 1670236 (E.D. Cal. May 3, 2011) ................................................... 14

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .............................................................. 15

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ........................................................................ 6

*Topadzhikyan v. Glendale Police Dep't*,
    2010 WL 2740163 (C.D. Cal. July 8, 2010) ................................................... 7

*Turner Broad. Sys., Inc. v. FCC,*
    520 U.S. 180 (1997) ...................................................................... 18

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994) ........................................................................ 3

*United States v. Union Auto Sales, Inc.,*
    490 F. App'x 847 (9th Cir. 2012) ................................................ 11

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ..................................................... 10

*Vietnam Veterans of Am. v. C.I.A.,*
    288 F.R.D. 192 (N.D. Cal. 2012) ................................................ 19

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,*
    429 U.S. 252 (1977) .................................................................... 8, 9

*Washington v. Certainteed Gypsum, Inc.,*
    2011 WL 3705000 (D. Nev. Aug. 24, 2011) .............................. 14

*Zimmerman v. City of Oakland,*
    255 F.3d 734 (9th Cir. 2001) ......................................................... 5

## **STATUTES**

42 U.S.C. § 12151 ............................................................................ 19

42 U.S.C. § 1981 .......................................................................passim

Fed. R. Civ. Proc. 15(a)(2) ............................................................ 20

Fed. R. Civ. Proc. 54(c) ................................................................ 18

Fed. R. Civ. Proc. 65 ................................................................ 2, 18

Fed. R. Civ. Proc. 8(a) .................................................................. 10

Fed. R. Civ. Proc. 9(b) .................................................................. 10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

iv

OPPOSITION TO TIME WARNER CABLE INC.'S MOTION TO DISMISS

1    I.    __INTRODUCTION__

2      This case is about intentional racial discrimination in contracting by two of

3    the country's largest cable companies, Comcast and Time Warner Cable ("TWC").

4    TWC maligns the Complaint as simply a vehicle for Plaintiff Entertainment Studios

5    Network, Inc.'s ("ESN") "private commercial interests."  (TWC Mot. to Dismiss at

6    1.)  But TWC's unlawful refusal to deal with ESN is anything but an ordinary

7    business dispute.  TWC engaged in discrimination hand-in-hand with its then-

8    pending merger partner, Comcast Corporation ("Comcast").

9      In 2014, ESN and TWC were on the cusp of reaching a deal for television

10    carriage when suddenly—and unexpectedly—TWC terminated the negotiations.

11    TWC blamed Comcast for its sudden change of position, stating to ESN that in light

12    of TWC and Comcast's then-pending merger, all carriage decisions had to be

13    approved by Comcast.  Despite promising signs from—and advanced negotiations

14    with—TWC, Comcast's interference was the only explanation given to ESN for

15    TWC's refusal to contract with ESN.

16      By expressly designating Comcast as its agent for carriage, *TWC adopted and*

17    *implemented Comcast's discriminatory contracting practices*—including Comcast's

18    dual paths for carriage (*i.e.*, the White Process vs. the MOU/Minority Process).

19    Plaintiffs set forth the allegations regarding Comcast's discriminatory contracting

20    practices in the concurrently filed opposition to Comcast, et al.'s motion to dismiss.

21    These allegations are incorporated herein but not restated in full.

22      TWC claims that the Complaint fails to state a cause of action because

23    Plaintiffs do not allege overtly racist conduct by TWC.  But this is not required to

24    plead a discrimination claim.  In fact, such explicit racism rarely exists in a

25    discrimination claim.  That is why courts, at the summary judgment stage, allow

26    claims to go to a jury when the plaintiff presents evidence that the defendant's

27    purported explanation for refusing to deal with the plaintiff is a pretext; overt

28    evidence of intentional discrimination is not required.  Nor must a plaintiff's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

allegations "exclude the possibility that the alternative explanation [posed by the defendant] is true." (TWC Mot. to Dismiss at 6.) Again, that is an impermissibly high burden that Plaintiffs do not even have to satisfy on summary judgment, let alone a motion to dismiss.

In addition, TWC's faulty First Amendment challenge to the Complaint is contrary to Supreme Court precedent. The application of 42 U.S.C. § 1981 to TWC's programming decisions does not require TWC to alter the *expressive content* of its speech. TWC is a cable distributor—a conduit—and its First Amendment rights do not give it license to discriminate on the basis of race. Thus, the First Amendment does not preclude § 1981's application to TWC's carriage decisions.

TWC's attempt to remove Plaintiff National Association of African American–Owned Media ("NAAAOM") from this lawsuit is also flawed. First, TWC claims that Plaintiffs' request for injunctive relief should be dismissed as "improper"—not because Plaintiffs are not legally entitled to such relief, but because the request purportedly lacks "specificity and detail." (TWC Mot. to Dismiss at 10.) There is no legal basis for TWC's argument. Plaintiffs' request for injunctive relief is narrowly tailored to prohibit the discrimination at issue in this lawsuit; and even if it were not, the Court can re-fashion the injunction to comply with Rule 65(d) at a later stage.

Second, TWC contests NAAAOM's standing to pursue injunctive relief. TWC concedes NAAAOM meets the constitutional requirements for standing but argues that NAAAOM should be dismissed for prudential reasons. But organizational plaintiffs, such as NAAAOM, have long been allowed to pursue *injunctive relief* for discrimination claims on behalf of their members—including when those members join the organization as co-plaintiffs in the action.

For these reasons, TWC's motion to dismiss should be denied in its entirety.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## II.    FACTUAL BACKGROUND

### A.    The Television Industry And Comcast's Failed Merger With TWC

Owners and producers of television content generally do not have a means of direct access to television viewers.  Rather, content owners and producers, like ESN, are reliant upon television distributors, like Comcast and TWC, to reach consumers. (Compl. ¶ 103.)  Television distributors thus "function[], in essence, as a conduit for the speech of others, transmitting it on a continuous and unedited basis to subscribers."  *Turner Broad. Sys., Inc. v. FCC* (*Turner I*), 512 U.S. 622, 629 (1994).

Comcast and TWC are therefore in a unique position to block content produced by 100% African American–owned media companies, such as ESN, from reaching their millions of subscribers.  *See id.* at 656 (noting that television distributors have "bottleneck, or gatekeeper, control over most (if not all) of the television programming that is channeled into the subscriber's home").

In February 2014, Comcast announced plans to acquire TWC for $45 billion. (Compl. ¶ 97.)  Following widespread reports that the FCC and U.S. Department of Justice were skeptical of the benefits of the merger and were unlikely to sign off on it, the deal collapsed.  On April 24, 2015, "Comcast announced its decision to abandon its $45 billion dollar bid to acquire [TWC]."  (Request for Judicial Notice ["RJN"] Ex. A [Statement from FCC Chairman Tom Wheeler on the Comcast-TWC Merger (April 24, 2015)].)

The demise of the merger has no impact on the claims at issue in this action. As alleged in the Complaint and discussed herein, *while the merger was pending*, Comcast and TWC unlawfully discriminated—and coordinated their discrimination—against ESN in contracting for channel carriage and advertising, in violation of § 1981.

### B.    NAAAOM

National Association of African American–Owned Media ("NAAAOM") was created and is working to obtain for 100% African American–owned media

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

companies the same contracting opportunities made available to their white counterparts for distribution, channel carriage, channel positioning, and advertising. (Compl. ¶ 34.)  Historically, 100% African American–owned media has been economically excluded from the television industry due to the lack of distribution and advertising support from distributors.  (Compl. ¶ 32.)   NAAAOM's mission is to remedy this economic exclusion.  (Compl. ¶ 34.)

ESN is a member of NAAAOM.  (Compl. ¶ 30.)  NAAAOM is open for new membership, and other African American–owned media companies have expressed interest in joining NAAAOM to promote its mission.  (Declaration of Mark DeVitre in support of Plaintiffs' Opposition to DirecTV's Motion to Dismiss ["DeVitre Decl."] ¶ 3.)  Since launching its website, NAAAOM has also received hundreds of registrants for its electronic newsletters.  (*Id.* ¶ 4.)

## C.    ESN

ESN is a 100% African American–owned video programming producer and multi-channel operator/owner, which owns and operates seven original content, high definition television networks.  (Compl. ¶¶ 35, 38.)  It was founded in 1993 by Byron Allen, an African American media entrepreneur.  (Compl. ¶ 36.)

ESN has carriage agreements with more than 40 distributors nationwide, including major distributors such as Verizon, CenturyLink and RCN.  (Compl. ¶ 37.)  These television distributors make ESN's channels available to a combined 7.5 million subscribers.  (Compl. ¶ 37.)  ESN's shows have proved popular among viewers of all demographics and have even garnered Emmy award nominations and wins.  (*See* Compl. ¶ 38 & Ex. A.)

In December 2012, ESN launched "Justice Central," a 24-hour, high-definition legal and news network featuring several Emmy-nominated and Emmy-award winning legal/court shows.  (Comp. ¶ 39.)  After just two years, "Justice Central" has already proved itself a successful, high-demand network, boasting triple-digit ratings growth across key television periods.  (Compl. ¶¶ 39, 54.)

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of The Stars, Suite 1000   Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

D.    **TWC's Refusal To Contract With ESN For Channel Carriage**

Despite substantial efforts, ESN has been unable to secure a carriage agreement with TWC.  (Compl. ¶¶ 29, 54, 56-57, 98, 114.)  In 2014, ESN held advanced negotiations for channel carriage with TWC executive Melinda Witmer.  (Compl. ¶ 57.)  Ms. Witmer was presenting ESN's information to TWC President and Chief Operating Officer Robert Marcus.  (Compl. ¶ 57.)  But before ESN and TWC could finalize and consummate a contract, Comcast put the kibosh on the deal.  (*See* Compl. ¶¶ 56-57.)

Following the announcement of the merger, TWC stated that it had delegated channel carriage decision-making to Comcast.  (Compl. ¶¶ 29, 56-57, 114.)  TWC advised ESN that any channels to be launched on TWC's television platform would need to be approved by Comcast's chief lobbyist and Executive Vice President, David Cohen.  (Compl. ¶¶ 26, 56-57.)  Comcast programming executive, Jennifer Gaiski, asked ESN—and ESN disclosed—who it was in discussions with at TWC regarding channel carriage.  (Compl. ¶ 57.)  Soon after, TWC pulled the plug on negotiations with ESN based on instructions from Comcast.  (*Id.*)

Pursuant to federal antitrust laws, TWC was legally obligated to make carriage and other contracting decisions on its own behalf.  Yet, TWC was unwilling to launch any new channels without express approval of Comcast.  (Compl. ¶ 56.)  By granting Comcast decision-making authority over its carriage decisions, TWC adopted, ratified and implemented Comcast's discriminatory policies and practices in contracting for channel carriage.  (Compl. ¶ 56.)

III.    **LEGAL STANDARD**

In ruling on a motion to dismiss, the Court must accept Plaintiffs' factual allegations as true and view all inferences in the light most favorable to Plaintiffs.  *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  To survive a motion to dismiss for failure to state a claim, the complaint's factual allegations must support a "plausible" claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   U.S. 544, 570 (2007).  "[D]etailed factual allegations" are not required.  *Ashcroft v.*

2   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

3       "The question presented by a motion to dismiss is not whether the plaintiff

4   will prevail in the action, but whether the plaintiff is entitled to offer evidence in

5   support of its claim."  *Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d

6   1107, 1113 (C.D. Cal. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511

7   (2002)).  Indeed, "a well-pleaded complaint may proceed even it if strikes a savvy

8   judge that actual proof of those facts would be improbable, and that a recovery is

9   very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks

10  omitted).

11  **IV.   ARGUMENT**

12     **A.   Section 1981 Broadly Prohibits Race Discrimination In**

13         **Contracting**

14       Pursuant to § 1981, "[a]ll persons . . . shall have the same right . . . to make

15  and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

16  Section 1981 is derived from section 1 of the Civil Rights Act of 1866, which, in

17  turn, was passed pursuant to Congress' authority to enact legislation to enforce the

18  Thirteenth Amendment.  *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441 n.78

19  (1968).

20       In passing the Civil Rights Act of 1866, Congress "was moved by a larger

21  objective—that of giving real content to the freedom guaranteed by the Thirteenth

22  Amendment."  *Id.* at 433.  Congress sought to eradicate "the necessary incidents of

23  slavery," and to secure for all citizens, regardless of race or color, "those

24  fundamental rights which are the essence of civil freedom."  *Civil Rights Cases*, 109

25  U.S. 3, 22 (1883).

26       To that end, section 1 of the Act was "cast in sweeping terms," *Jones*, 392

27  U.S. at 422, broadly granting "citizens, of every race and color, without regard to

28  any previous condition of slavery or involuntary servitude . . . the same right, in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    every State and Territory in the United States, to make and enforce contracts . . . as
2    is enjoyed by white citizens," Act of April 9, 1866, c.31, s.1, 14 Stat. 27.

3        Plaintiffs have alleged that TWC has refused to contract with ESN, a 100%
4    African American–owned media company, because of race.  Plaintiffs' allegations
5    are sufficient to state a claim under § 1981.

6        **B.    The Complaint Alleges Intentional Discrimination By TWC**

7        To state a § 1981 claim, a plaintiff must allege that "(1) the plaintiff is a
8    member of a racial or ethnic minority; (2) the defendant(s) intentionally
9    discriminated against the plaintiff because of race, ethnicity or national origin; and
10   (3) the discrimination concerned one or more activities enumerated in the statute."
11   *Topadzhikyan v. Glendale Police Dep't*, 2010 WL 2740163, at *3 (C.D. Cal. July 8,
12   2010).

13       TWC concedes that the Complaint sufficiently alleges ESN is a member of a
14   racial minority and an "unconsummated channel carriage opportunity with TWC."
15   (TWC Mot. to Dismiss at 5.)  TWC argues, however, that the Complaint should be
16   dismissed for failure to allege "facts raising even an inference of purposeful racial
17   discrimination by TWC."  (*Id.*)  TWC is wrong.

18       As TWC also concedes, a discrimination plaintiff may rely on circumstantial
19   evidence to satisfy the discriminatory intent element.  (*Id.*)  Here, the circumstantial
20   evidence supports a plausible inference that TWC's decision to delegate carriage
21   decisions to Comcast and to refuse to contract with ESN was based on race.

22       In 2014, ESN and TWC were engaged in advanced negotiations for a carriage
23   agreement.  (Compl. ¶ 57.)  ESN provided information to TWC about its
24   programming, including the success of its recently launched "Justice Central,"
25   which boasted tremendous ratings growth on TWC's competitors' television
26   platforms.  (*See* Compl. ¶¶ 54, 57.)  ESN's main contact at TWC, Melinda Witmer,
27   even presented ESN's information to TWC President and Chief Operations Officer,
28   Robert Marcus.  (Compl. ¶ 57.)  All signs indicated that TWC had evaluated ESN's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

254548.6

7

1  content as qualified to be launched on its cable platform and that the parties would

2  soon be consummating a carriage agreement.

3      But in May 2014, TWC suddenly backed out on the negotiations.  The

4  explanation given to ESN was that TWC would not be launching any new channels

5  unless expressly approved by Comcast.  (Compl. ¶ 56.)  As alleged in the Complaint

6  and discussed in Plaintiffs' concurrently filed opposition to Comcast's motion to

7  dismiss, Comcast's carriage decisions were—and are—motivated by racial animus.

8  (Compl. ¶¶ 12, 53-54, 75, 79, 88-90.)  For example, Comcast stated that it would

9  contract with ESN only if the carriage agreement would satisfy the purported

10 diversity commitments Comcast made in the sham Memorandum of Understanding

11 ("MOU") it entered into with Defendants NAACP, National Urban League, Al

12 Sharpton, and National Action Network.  Yet the MOU has not resulted in the

13 launch of *any* networks that are 100% African American–owned or controlled.

14 (Compl. ¶¶ 20-23, 73.)

15     Comcast's MOU was publicly filed with the FCC and its purported diversity

16 commitments were common knowledge within the television industry.  (*See* RJN

17 Ex. B [MOU].)  And it is readily apparent that Comcast never lived up to these

18 commitments.  Yet, TWC allowed Comcast to exercise authority over TWC's

19 carriage decisions.  (Compl. ¶¶ 29, 56-57.)  Once Comcast got involved, TWC

20 promptly shut down negotiations with ESN.

21     TWC's acting per direction from Comcast and its 180-degree change of

22 position give rise to an inference of discriminatory motive.  Indeed, "[i]t is well

23 settled law that departures from established practices may evince discriminatory

24 intent."  *Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir. 1996) (citing *Village of

25 Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)).

26     Here, TWC's "established practice[]" was to make its own carriage decisions.

27 But in the face of its pending merger with Comcast, TWC delegated those decisions

28 to Comcast, thus adopting and agreeing with Comcast's racist policies and practices

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

254548.6

8

1  in contracting for channel carriage.  (Compl. ¶¶ 29, 56-57, 114.)  These allegations,

2  taken as true, are sufficient.  TWC's motion should be denied.

3      **C.**    <u>**Plaintiffs Need Not Plead An Agency Relationship Between TWC**</u>

4             <u>**And Comcast**</u>

5        TWC argues that Plaintiffs' § 1981 claim fails because TWC cannot be held

6  liable for Comcast's discriminatory contracting practices without allegations of an

7  agency relationship.  (TWC Mot. to Dismiss 7-8.)  This argument is a red herring.

8  The Complaint alleges that TWC "adopted and agreed" with Comcast's

9  discriminatory practices by delegating carriage decisions to Comcast and by

10  refusing to contract with ESN at Comcast's direction.  (Compl. ¶¶ 29, 56-57, 114;

11  *see also supra* Part IV.B.)  In other words, Plaintiffs' § 1981 claim against TWC is

12  based on TWC's *own conduct*—its refusal to contract with ESN.

13        As TWC recognizes, its delegation of carriage decisions to Comcast while

14  their merger was pending was prohibited by federal antitrust laws.  (TWC Mot. to

15  Dismiss 8; *see also* Compl. ¶¶ 29, 56.)  That TWC nevertheless did so constitutes

16  evidence of its discriminatory intent.  *See, e.g., Nabozny*, 92 F.3d at 455 ("It is well

17  settled law that departures from established practices may evince discriminatory

18  intent." (citing *Village of Arlington Heights*, 429 U.S. at 267)).  TWC's "departure[]

19  from [its] established practices" for negotiating carriage (and its potential violation

20  of federal antitrust laws) thus supports Plaintiffs' § 1981 claim, rendering

21  allegations of an agency relationship unnecessary.

22        Recognizing that TWC's delegation of decision-making to Comcast is

23  sufficient, in and of itself, to subject TWC to § 1981 liability, TWC argues that the

24  Court should disregard these allegations as "vague and conclusory."  (TWC Mot. to

25  Dismiss 7.)  Not so.  As alleged in the Complaint, soon after ESN disclosed that it

26  was having advanced carriage negotiations with TWC to Comcast, a TWC board

27  member told ESN that it would not launch any new channels without Comcast's

28  approval.  (Compl. ¶¶ 29, 56-57, 114.)  TWC's suggestion that Plaintiffs must allege

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1 the "who, what, when, where, and how" of this statement impermissibly imposes

2 Rule 9(b)'s heightened pleading standard to Plaintiffs' non-fraud claims. *Vess v.*

3 *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (applying Rule 9(b) to

4 evaluate "[a]verments of fraud").  Rule 8(a) requires only a "short and plain

5 statement" for Plaintiffs' § 1981 claim.  Plaintiffs have satisfied this standard.

6       Even if Plaintiffs were required to allege an agency relationship (they need

7 not), the Complaint includes allegations sufficient to raise an inference of an agency

8 relationship between TWC and Comcast.  "[Q]uestions of agency are evidentiary in

9 nature" and are not properly resolved on a motion to dismiss.  *Lindsay v. Yates*, 498

10 F.3d 434, 442 (6th Cir. 2007) (reversing dismissal of § 1981 claim).  Indeed, the two

11 cases cited by TWC—*General Building Contractors Association, Inc. v.*

12 *Pennsylvania*, 458 U.S. 375 (1982), and *Morgan v. Safeway Stores, Inc.*, 884 F.2d

13 1211 (9th Cir. 1989)—were decided after trial and entry of summary judgment,

14 respectively.  At this stage, Plaintiffs are not required to prove an agency

15 relationship; they need only allege facts from which an agency relationship may be

16 inferred.  *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 955-56

17 (N.D. Cal. 2014) (denying motion to dismiss where complaint included allegations

18 sufficient to create reasonable inference of agency relationship).

19       Here, the Complaint alleges that TWC delegated channel carriage decision-

20 making authority to Comcast—*i.e.*, TWC gave Comcast authority to make carriage

21 decisions on its behalf.  (Compl. ¶¶ 29, 56-57, 114.)  This allegation is supported by

22 specific factual allegations regarding Defendants' conduct in this case.  Comcast

23 asked ESN to identify the executive at TWC with whom ESN was negotiating for

24 carriage.  (Compl. ¶ 57.)  Immediately after ESN disclosed this to Comcast, ESN's

25 channel launch opportunity with TWC was terminated.  (Compl. ¶ 57.)  TWC

26 explicitly stated to ESN that any channels to be launched on TWC's television

27 platform needed to be expressly approved by Comcast's David Cohen.  (Compl. ¶

28 56.)  These allegations more than "plausibly" demonstrate the existence of an

254548.6

10

1    agency relationship between TWC and Comcast.

2    **D.    TWC Attempts To Impose Impermissibly High Burdens At The**

3    **Pleading Stage**

4    Throughout its Motion, TWC advocates a heightened pleading standard for

5    Plaintiffs' § 1981 claim.  But § 1981 claims are governed by Rule 8(a)'s liberal

6    pleading standards.  *See Swierkiewicz*, 534 U.S. at 513; *Maduka v. Sunrise Hosp.*,

7    375 F. 3d 909, 912 (9th Cir. 2004) ("*Swierkiewicz* governs complaints in section

8    1981 discrimination actions.").  Although *Swierkiewicz* precedes the Supreme

9    Court's decisions in *Twombly* and *Iqbal*, the Ninth Circuit has repeatedly reaffirmed

10   the applicability of *Swierkiewicz*'s pleading approach since those cases were

11   decided.  *E.g.*, *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 n.2 (9th

12   Cir. 2012); *United States v. Union Auto Sales, Inc.*, 490 F. App'x 847, 848 (9th Cir.

13   2012) ("The district court confused the standard for stating a claim of discrimination

14   at the pleading stage and the evidentiary standards that must be met to prove that

15   claim.").

16   At the pleading stage, a plaintiff need only allege facts "from which a

17   conclusion of discriminatory animus can be plausibly drawn."  *Faith Action for*

18   *Cmty. Equity v. Hawaii*, 2014 WL 1691622, at *11 (D. Haw. Apr. 28, 2014) (noting

19   that the "sensitive inquiry" into evidence of intent "can only occur based on

20   evidence presented after discovery").  As set forth above, Plaintiffs have satisfied

21   this burden.

22   **1.    Plaintiffs Need Not Show that TWC Treats Non-African**

23   **American-Owned Similarly Situated Entities Differently**

24   TWC states that the "Complaint does not allege that TWC treated similarly

25   situated media companies that are not owned by African Americans differently."

26   (TWC Mot. to Dismiss at 6.)  TWC misses the mark.

27   First, the "similarly situated" element derives from the *McDonnell Douglas*

28   burden-shifting framework that is used to evaluate claims of intentional

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    discrimination at the *summary judgment stage*—not on a motion to dismiss.  *See*

2    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Indeed, "[t]he

3    prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a

4    pleading requirement."  *Swierkiewicz*, 534 U.S. at 510.  Plaintiffs are "*not required*

5    to plead a prima facie case of discrimination in order to survive a motion to

6    dismiss."  *Sheppard*, 694 F.3d at 1050 n.2; *see also O'Donnell v. U.S. Bancorp*

7    *Equip. Fin., Inc.*, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) ("[A] prima

8    facie case need not be pleaded in a complaint alleging discrimination." (citing

9    *Twombly*, 550 U.S. at 569-70)).

10          Second, even at the summary judgment stage, it is "clearly establish[ed] that

11   plaintiffs who allege disparate treatment under statutory anti-discrimination laws

12   need not demonstrate the existence of a similarly situated entity who or which was

13   treated better than the plaintiffs in order to prevail."  *Pac. Shores Props., LLC v.*

14   *City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013); *see also id.* at 1159

15   ("*McDonnell Douglas* simply *permits* a plaintiff to raise an inference of

16   discrimination by identifying a similarly situated entity who was treated more

17   favorably.  It is not a straightjacket *requiring* the plaintiff to demonstrate that such

18   similarly situated entities exist."); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

19   1122 (9th Cir. 2004).  It would be illogical if, to survive a motion to dismiss,

20   Plaintiffs were required to *plead* an element they need not even *prove* to prevail on

21   summary judgment.  *See Swierkiewicz*, 534 U.S. at 511-12.

22          Indeed, under Ninth Circuit precedent, the similarly situated element may not

23   apply at all in the commercial, non-employment context present here.  *Lindsey v.*

24   *SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2005) (cautioning against

25   applying the similarly situated element in the commercial context because it may be

26   "too rigorous in the context of the denial of services by a commercial establishment,

27   because customers often have no way of establishing what treatment was accorded

28   to other customers"); *see also Swierkiewicz*, 534 U.S. at 512 ("[T]he precise

Miller Barondess, llp
Attorneys at Law
1999 Avenue of The Stars, Suite 1000   Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

1    requirements of a prima facie case can vary depending on the context . . . .").  Since

2    *Lindsey*, courts have held that plaintiffs need not allege facts regarding similarly

3    situated people in order to state a discrimination claim.  *E.g.*, *Lanier v. Clovis*

4    *Unified Sch. Dist.*, 2010 WL 3733953, at *7 (E.D. Cal. Sept. 20, 2010) ("Where the

5    contract in question is commercial and not employment, courts of this circuit have

6    modified the *McDonnell prima facie* elements by omitting the last element.");

7    *Clemons v. Keller Williams Realty, Inc.*, 2012 WL 994623, at *2 (C.D. Cal. Mar. 23,

8    2012).

9        This case exemplifies why the similarly situated element should not apply.

10    TWC's carriage agreements with other content providers—similarly situated or

11    otherwise—are not publicly available.  Indeed, in connection with the recent merger

12    proceedings before the FCC, such agreements were treated as "highly confidential";

13    third parties were not allowed to review them except in connection with the merger

14    proceedings.  (RJN Ex. C at 3, 6 [Second Amended Modified Joint Protective Order

15    (Nov. 12, 2014)].)  Given the confidentiality of TWC's carriage agreements,

16    requiring Plaintiffs to allege facts as to the similarly situated element to survive a

17    motion to dismiss would ensure TWC could *never* be subject to suit for its

18    discriminatory practices in contracting for television carriage.  That is contrary to

19    the "sweeping terms" cast by Congress in enacting—by a two-thirds majority over

20    President Andrew Johnson's veto—the Civil Rights Act of 1866.

21        **2.    Plaintiffs Are Not Required to Exclude Alternative**

22        **Explanations for TWC's Refusal to Contract with ESN**

23        TWC asserts that the Complaint should be dismissed because the "only

24    plausible explanation" for TWC's refusal to contract with ESN is that "TWC made a

25    legitimate business decision in declining to carry ESN's channels."  (TWC Mot. to

26    Dismiss at 6.)  According to TWC, the Court should, at the pleading stage, evaluate

27    ESN's channels and deem them to have no "novel (or profitable) content."  (*Id.* at 6

28    n.4.)  This is not a proper inquiry on a motion to dismiss; it's a question of fact

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   reserved for a later stage of the proceedings.  *See, e.g.*, *Small v. Feather River Coll.*,

2   2011 WL 1670236, at *5 (E.D. Cal. May 3, 2011) ("[Defendant's] arguments that

3   Plaintiff was actually the lesser qualified candidate, or that race discrimination was

4   not a factor in hiring, are more appropriate for a summary judgment motion than a

5   motion to dismiss."); *Washington v. Certainteed Gypsum, Inc.*, 2011 WL 3705000,

6   at *7 n.4 (D. Nev. Aug. 24, 2011).

7       Here, Plaintiffs have alleged that it was in TWC's business interests to enter

8   into a carriage agreement with ESN and that TWC was close to doing so before

9   discriminatory intent intervened.  ESN produces Emmy award–winning

10  programming and has carriage agreements for its television channels with more than

11  40 television distributors nationwide, including major distributors (and competitors

12  of TWC) such as Verizon, Century Link and RCN.  (Compl. ¶¶ 37-38 & Ex. A.)

13  These television distributors make ESN's channels available to their combined 7.5

14  million subscribers.  (Compl. ¶ 37.)  Additionally, ESN's successful 24-hour legal

15  and news network, "Justice Central," has garnered triple-digit ratings growth

16  between the first quarter of 2013 and the fourth quarter of 2014.  (Compl. ¶ 54.)

17  TWC's suggestion that the "only plausible explanation" for its refusal to deal is that

18  it made a business decision not to license ESN's content is contradicted by these

19  factual allegations.

20      Under the Supreme Court's ruling in *Swierkiewicz*, a complaint states a

21  discrimination claim as long as it gives the defendant "fair notice" of the plaintiff's

22  claims.  *Swierkiewicz*, 534 U.S. at 512.  Plaintiffs are not required to "*exclude* the

23  possibility of an alternative explanation" for TWC's refusal to contract with ESN.

24  (TWC Mot. to Dismiss at 6 [emphasis added].)

25      *Twombly/Iqbal* do not support Defendants' heightened standard.  As an initial

26  matter, *Twombly* expressly upheld and reaffirmed *Swierkiewicz*'s liberal pleading

27  standard for discrimination cases.  *Twombly*, 550 U.S. at 569-70.  Moreover, the

28  Ninth Circuit recognizes that "[t]he level of factual specificity needed to satisfy

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  [*Twombly/Iqbal*'s plausibility] pleading requirement will vary depending on the

2  context." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir.

3  2013).  A plaintiff need not, especially in difficult to prove discrimination cases,

4  exclude all possible alternative explanations for the defendant's conduct.

5      The cases cited by TWC do not suggest otherwise.  For example, in *Century*

6  *Aluminum* (relied on by TWC), the plaintiffs brought a Securities Act claim which

7  required them to allege that they purchased shares that were traceable to a

8  misleading registration statement.  729 F.3d at 1106.  In that context, the court was

9  "faced with two possible explanations, *only one of which* [could] be true":  Either

10  the shares came from the secondary offering at issue in the complaint or they came

11  from some other pool of previously issued shares.  *Id.* at 1108 (emphasis added).  In

12  that scenario, the Ninth Circuit required "something more" than allegations that

13  were "merely consistent" with the plaintiff's favored explanation.  *Id.*  The court

14  indicated that "something more" might include allegations excluding the possibility

15  of the alternative explanation.  *Id.* ("Something more is needed, *such as* facts

16  tending to exclude the possibility that the alternative explanation is true." (emphasis

17  added)).

18      Unlike in *Century Aluminum*—where either the shares were traceable to the

19  misleading registration statement or they were not—there are not two mutually

20  exclusive possibilities here.  The Complaint alleges facts supporting Plaintiffs'

21  claim that TWC's decision was motivated by race; TWC disputes this, claiming its

22  decision was an "objective business decision."  (TWC Mot. to Dismiss at 6.)  This

23  dispute cannot be adjudicated on a motion to dismiss.  *Starr v. Baca*, 652 F.3d 1202,

24  1216 (9th Cir. 2011) (finding that when a court is faced with competing, plausible

25  explanations, a motion to dismiss should be denied).

26      Moreover, TWC's argument that Plaintiffs must allege facts that would

27  exclude all possible non-discriminatory reasons for TWC's refusal to contract turns

28  the legal standard for pleading and proving discrimination claims on its head.  After

1  discovery, TWC—not Plaintiffs—will ultimately bear the burden of "produc[ing]

2  evidence of a legitimate non-discriminatory reason" for refusing to contract with

3  ESN. *Lindsey*, 447 F.3d at 1147 (discussing the second step in the *McDonnell*

4  *Douglas* burden-shifting framework on summary judgment). Despite this, TWC is

5  attempting to place what will be its burden at *summary judgment* on Plaintiffs at the

6  *motion to dismiss* stage. This cart-before-the-horse approach is improper and

7  unworkable. Indeed, the purported, alternative reason relied on by TWC—that it

8  "made an objective business decision"—concerns information about TWC's

9  business practices that is solely within TWC's possession. *See Haley v. TalentWise,*

10  *Inc.*, 2014 WL 1648480, at *2 (W.D. Wash. Apr. 23, 2014) (denying motion to

11  dismiss where plaintiff "could not plead more factual specificity because she

12  [would] not have further evidence regarding [defendant's] procedures until the

13  parties [began] discovery").

14    **E.    The First Amendment Does Not Insulate TWC From Liability**

15    TWC claims that it has free reign to intentionally discriminate against

16  Plaintiffs because the First Amendment protects programming decisions of

17  television distributors. (TWC Mot. to Dismiss 8-10.) This is wrong. TWC's

18  argument rests on a fundamental misunderstanding of the role the First Amendment

19  plays in the cable industry.

20    A unanimous Supreme Court expressly distinguished the problem of

21  compelled speech in the cable industry from other contexts. *See Hurley v. Irish-Am.*

22  *Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995); *Turner I*, 512 U.S. at

23  636. *Hurley* recognized that concerns that compelled speech will compromise the

24  "speaker's right to autonomy over [its] message" are "*absent* in the cable context."

25  *Id.* at 576 (emphasis added). That is because there is "little risk that cable viewers

26  would assume that the . . . stations carried on a cable system convey ideas or

27  messages endorsed by the cable operator." *Id.* (quoting *Turner I*, 512 U.S. at 655);

28  *cf. PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (shopping center's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

16

First Amendment rights not infringed because views expressed by members of the public on shopping center's property are unlikely to be identified with those of the owner).

In other words, unlike the selection of participants for a parade, which is likely to be perceived as showing support for the message conveyed by the participant, television viewers are unlikely to confuse a cable distributor's message with that of the content producer. *See Hurley*, 515 U.S. at 576 ("Unlike the programming offered on various channels by a cable network, the parade does not consist of individual, unrelated segments that happen to be transmitted together for individual selection by members of the audience.").

TWC's reliance on a Middle District of Tennessee case in which the court recognized television *producers'* First Amendment right "to control the message and creative content of [its] show[]," is unavailing. (TWC Mot. to Dismiss at 9 [citing *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 999-1000 (M.D. Tenn. 2012)].) TWC is not a content producer; it is a cable distributor—a conduit— transmitting creative content that is produced by others. TWC argues the "same logic and result" that led to the court's dismissal of a discrimination claim against a television *producer* applies to a television *distributor*. (*Id.* at 9-10 .) It does not. TWC's argument is contrary to controlling Supreme Court precedent: *Hurley* unambiguously held that the "same logic and result" does *not* apply to cable distributors. *See Hurley*, 515 U.S. at 575-76.

*Hurley* likewise distinguished the First Amendment rights of newspaper publishers from those of cable operators. *Hurley*, 515 U.S. at 575 (noting that, unlike a cable operator, a newspaper "is more than a passive receptacle or conduit for news, comment, and advertising" (internal quotation marks omitted)); *see also Turner I*, 512 U.S. at 656 (distinguishing newspaper publishers from cable operators). Thus, TWC's reliance on *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950 (9th Cir. 2010), discussing the First Amendment rights of a newspaper

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  publisher, is equally unavailing.

2       The First Amendment does not shield TWC from liability for its violations of

3  a content-neutral statute that prohibits discrimination on the basis of race.  *See*

4  *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) (upholding content-

5  neutral "must-carry" regulations under intermediate scrutiny).  Here, unlike in

6  *Claybrooks*, § 1981 does not require TWC to alter the expressive content of its

7  speech.  Rather, ESN "seeks only to be heard, not to have [its] speech included or

8  possibly confused with another's."  *Gathright v. City of Portland, Or.*, 439 F.3d 573,

9  578 (9th Cir. 2006).  TWC's First Amendment argument fails.

10      **F.    Plaintiffs' Request for Injunctive Relief Should Not Be Dismissed**

11      TWC argues Plaintiffs' request for injunctive relief is improper in that it

12  "merely restates a statute and asks a party to 'stop discriminating.'"  (TWC Mot. to

13  Dismiss 10.)  That is false.

14      The Complaint seeks an injunction "prohibiting Defendants from

15  discriminating against African American–owned media companies on the basis of

16  race in contracting for channel carriage and advertising."  (Compl. ¶ 31; *see also*

17  Compl. at 28 [Prayer].)  The request for injunctive relief thus seeks an injunction

18  prohibiting Defendants from racially discriminating against a particular, identifiable

19  group—African American–owned media companies—in particular, identifiable

20  aspects of Defendants' business practices—contracts for carriage and advertising.

21      Moreover, TWC cites to no case law supporting dismissal of a prayer for

22  injunctive relief as too vague on a motion to dismiss.  Instead, TWC relies on cases

23  dealing with the propriety of injunctions that have *actually been issued*.  (*See* TWC

24  Mot. to Dismiss 10 [citing cases].)  Federal Rule of Civil Procedure 65 likewise

25  governs the Court's *issuance* of an injunction, not pleading requirements.

26      In fact, injunctive relief may be granted even where a plaintiff fails to demand

27  such relief in the complaint.  Fed. R. Civ. Proc. 54(c) ("[A non-default] final

28  judgment should grant the relief to which each party is entitled, *even if the party has*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*not demanded that relief in its pleadings*." (emphasis added)); *see also Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 202-03 (N.D. Cal. 2012) (allowing claim for injunctive relief that was not asserted in the complaint). It makes no sense to dismiss a request for injunctive relief as too vague when a plaintiff need not even include a demand for such relief at all.

TWC's argument is premature. If and when the Court grants Plaintiffs' request for injunctive relief, it can modify the scope of the injunction, as necessary, to comply with Rule 65(d).

### G.    NAAAOM Has Standing to Pursue Injunctive Relief

NAAAOM has associational standing to seek injunctive relief under § 1981. An association has standing as the representative of its members so long as

> (1) at least one member has standing, in his own right, to present a claim asserted by the association; (2) the interests sought to be protected are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires that the members participate individually in the suit.

*N.A.A.C.P. v. Ameriquest Mortg. Co.*, 635 F. Supp. 2d 1096, 1102 (C.D. Cal. 2009). The first two of these requirements are constitutional; the third is prudential. *See id.*

NAAAOM easily satisfies the three requirements for associational standing. First, TWC does not contest ESN's standing to pursue this action. Second, there can be no dispute that the interests NAAAOM seeks to protect in this lawsuit are germane to its purpose. (*See* Compl. ¶ 34.) Third, NAAAOM seeks only injunctive relief, and thus the individual participation of NAAAOM's members is not required. *See Ameriquest Mortg.*, 635 F. Supp. 2d at 1102-03.

TWC challenges NAAAOM's standing solely on prudential, not constitutional, grounds. TWC cites two cases, both of which deal with organizational plaintiffs that were pursuing claims alongside their member co-plaintiffs under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12151, *et seq.* (*See id.* [citing cases].) But this is not an ADA case. In the ADA context, a special concern arises when an organizational plaintiff seeks to obtain injunctive

Miller Barondess, llp
Attorneys at Law
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  relief to remedy ADA violations that have not injured the member co-plaintiff—*e.g.*,

2  when the organization seeks "relief such as large print menus and braille signs," but

3  the member co-plaintiff has no visual impairment.  *Jankey v. Beach Hut*, 2005 WL

4  5517235, at *7 n.5 (C.D. Cal. Dec. 8, 2005).  By contrast, here, NAAAOM's request

5  for injunctive relief is only as broad as necessary to remedy the harm ESN has

6  suffered—namely, to prohibit Defendants from discriminating against 100% African

7  American–owned media companies in contracting for channel carriage and

8  advertising.

9       Moreover, contrary to TWC's claims, NAAAOM is not merely a "reiteration

10 of ESN."  (TWC Mot. to Dismiss 11.)  Though ESN is the only 100% African

11 American–owned video programming producer *and multi-channel operator/owner*

12 in the United States, there are indeed 100% African American–owned media

13 companies (that are *not* multi-channel operator/owners) other than ESN.  (Compl.

14 ¶¶ 2, 7, 35, 87.)  Moreover, NAAAOM is open for new membership and several

15 prospective members have contacted NAAAOM to discuss membership.  (*See*

16 DeVitre Decl. ¶ 3.)  NAAAOM is a proper party to this lawsuit.

17 **V.    IF THE COURT GRANTS TWC'S MOTION, PLAINTIFFS SHOULD**

18 **BE ALLOWED LEAVE TO AMEND**

19      "Rule 12(b)(6) motions are viewed with disfavor," and dismissal with

20 prejudice should be granted only in "extraordinary" cases.  *Broam v. Bogan*, 320

21 F.3d 1023, 1028 (9th Cir. 2003).  Instead, Rule 15(a)(2) directs a court to "freely

22 give leave" to amend.  To the extent Plaintiffs' § 1981 claim is deemed insufficient

23 to state a claim under the liberal pleading standards set forth in Rule 8(a), Plaintiffs

24 respectfully request leave to amend to cure any such deficiency.

25 **VI.   CONCLUSION**

26      For the foregoing reasons, Plaintiffs respectfully request that the Court deny

27 TWC's motion to dismiss the Complaint in its entirety.

28

1  DATED:  May 8, 2015              Respectfully submitted,

2                                   MILLER BARONDESS, LLP

3

4

5                                   By:      /s/ Louis R. Miller

6                                        LOUIS R. MILLER
                                         Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

254548.6

OPPOSITION TO TIME WARNER CABLE INC.'S MOTION TO DISMISS