BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
RACHEL J. FELDMAN (SBN 246394)
rfeldman@whitecase.com
JULIAN A. LAMM (SBN 284637)
jlamm@whitecase.com
SCOTT T. EISEN (SBN 300020)
seisen@whitecase.com
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

Attorneys for Defendant
TIME WARNER CABLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| National Association of African-American Owned Media, a California limited liability company; and Entertainment Studios Networks, Inc., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Comcast Corporation, a Pennsylvania corporation; Time Warner Cable Inc., a Delaware corporation; National Association for the Advancement of Colored People, a New York corporation; National Urban League, Inc., a New York corporation; Al Sharpton, an individual; National Action Network, Inc., a New York corporation; Meredith Attwell Baker, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:15-cv-01239-TJH-MAN<br><br>**DEFENDANT TIME WARNER CABLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Date:  June 8, 2015<br>Time:  UNDER SUBMISSION<br>Courtroom:  17<br>Judge:  Hon. Terry J. Hatter, Jr. |

Americas 90570267

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE DISCRIMINATORY INTENT ..................................................................................................1

    A. Plaintiffs' Vague Allegation That TWC Delegated Its Channel Carriage Authority to Comcast Does Not Raise an Inference of Discriminatory Intent ..................................................................................................2

    B. Plaintiffs Fail to Allege an Agency Relationship to Impute Comcast's Alleged Practices on TWC ..................................................................................................4

III. PLAINTIFFS UNNECESSARILY OBFUSCATE THE PLEADING STANDARD ..................................................................................................5

IV. PLAINTIFFS' SECTION 1981 CLAIM IS BARRED BY THE FIRST AMENDMENT ..................................................................................................7

V. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS IMPROPER AND NAAAOM SHOULD BE DISMISSED FOR LACK OF STANDING ..................................................................................................10

VI. CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Agape Church, Inc. v. FCC*,
  738 F.3d 397 (D.C. Cir. 2013) ................................................................................. 9

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................................ passim

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ passim

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) .................................................................................. 11

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................................ 6, 7

*Claybrooks v. Am. Broad. Companies, Inc.*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................................................ 9

*Comcast Cable Commc'ns, LLC v. FCC*,
  717 F.3d 982 (D.C. Cir. 2013) ........................................................................ passim

*Comcast Corp. v. FCC*,
  579 F.3d 1 (D.C. Cir. 2009) .................................................................................... 9

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................................. 5

*Elend v. Sun Dome, Inc.*,
  370 F. Supp. 2d 1206 (M.D. Fla. 2005) ............................................................... 10

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
  458 U.S. 375 (1982) ........................................................................................... 4, 5

*Hung Duong Nguon v. Geragos*,
  2011 WL 2173640 (C.D. Cal. Jan. 26, 2011) ........................................................ 6

*Hunt v. Wash. State Apple Adver. Comm'n*
  432 U.S. 333 (1977) .............................................................................................. 11

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U.S. 557 (1995) ................................................................................................ 8

*McDermott v. Ampersand Publ'g, LLC*,
  593 F.3d 950 (9th Cir. 2010) .................................................................................. 9

*Nabozny v. Podlesny*,
  92 F.3d 446 (7th Cir. 1996) .................................................................................... 3

DEFENDANT TWC'S REPLY BRIEF

Americas 90570267

*Payne v. Travenol Labs., Inc.*,
  565 F.2d 895 (5th Cir. 1978) .................................................................. 10

*Rowe v. N.Y. State Div. of the Budget*,
  2012 WL 4092856 (N.D.N.Y Sept. 17, 2012) ......................................... 11

*Sheppard v. David Evans & Assocs.*,
  694 F.3d 1045 (9th Cir. 2012) .................................................................. 6

*Stribling v. Concord Vill., Inc.*,
  2011 WL 3648280 (D. Ariz. Aug. 19, 2011) ............................................ 5

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) .................................................................................. 5

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) ............................................................................. 7, 8

*United States v. Union Auto Sales, Inc.*,
  490 F. App'x 847 (9th Cir. 2012) ............................................................. 6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .................................................................................. 3

## FEDERAL CONSTITUTION

U.S. Const. amend. I ........................................................................... passim

## FEDERAL RULES

Fed. R. Civ. Proc. 9(b) .............................................................................. 3

Fed. R. Civ. Proc. 65(d) .......................................................................... 10

## I. INTRODUCTION

Plaintiffs Entertainment Studios Networks, Inc. ("ESN") and the National Association of African-American Owned Media ("NAAAOM") (collectively, "Plaintiffs") fail to allege facts supporting a plausible claim for intentional discrimination in contracting against defendant Time Warner Cable Inc. ("TWC"). Their Complaint includes only a single vague, conclusory assertion as to TWC -- that TWC terminated all channel carriage negotiations, including those with ESN, at Comcast's direction and, therefore, Comcast's alleged discriminatory practices were imputed to TWC -- and that allegation is insufficient as a matter of law. Plaintiffs' Opposition does little more than repeat, rephrase, and recast this conclusory allegation. Still, the Complaint remains deficient, as it does not include a single *fact* that raises even a plausible inference of intentional discrimination by TWC, as required by *Iqbal* and *Twombly*.

The Court should also dismiss the Complaint against TWC on constitutional grounds. TWC's channel carriage decision-making is a form of speech protected by the First Amendment. Plaintiffs' First Amendment analysis misses the mark altogether, mischaracterizing cable operators as mere passive conduits. TWC exercises editorial discretion in selecting channels and, thus, is much more than a passive conduit and enjoys the full protection of the First Amendment. Plaintiffs' effort to circumvent TWC's editorial discretion for the sole purpose of advancing ESN's own private commercial advantage clearly infringes TWC's First Amendment rights. The Court should dismiss with prejudice Plaintiffs' single section 1981 racial discrimination claim against TWC.

## II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE DISCRIMINATORY INTENT

The Complaint fails to state a plausible claim of intentional discrimination against TWC. Plaintiffs' Opposition cannot remedy the fundamental flaw of the Complaint: it does not allege any *facts* raising even an inference of purposeful

- 1 -

Americas 90570267

racial discrimination by TWC. Rather, the Complaint attempts to implicate TWC solely by imputing Comcast's alleged policies and practices on TWC. *See* Compl. ¶ 56 ("Time Warner Cable . . . has adopted and agreed with Comcast's . . . policies and practices in contracting for carriage."); Compl. at 28, Prayer ¶ 2 ("Plaintiffs . . . pray for injunctive relief prohibiting *Comcast* from discriminating.") (emphasis added). Plaintiffs, however, do not allege adequate facts to hold TWC liable for the alleged policies or practices of a third party.

### A. Plaintiffs' Vague Allegation That TWC Delegated Its Channel Carriage Authority to Comcast Does Not Raise an Inference of Discriminatory Intent

The Complaint does not include a single allegation of intentional discrimination or racial animus against TWC. Plaintiffs merely allege that an unnamed TWC board member told ESN that, as a result of the proposed merger, TWC delegated its channel carriage contracting responsibilities to Comcast, and, at Comcast's direction, TWC did not enter into a carriage contract with ESN. Compl. ¶¶ 56-57. Plaintiffs allege nothing more against TWC. In fact, out of a total of 124 paragraphs in the Complaint, specific allegations against TWC appear in only two paragraphs. *See id.* No act of intentional racial discrimination can be inferred from such a vague and conclusory allegation.

In their Opposition, Plaintiffs argue that TWC's "180-degree change of position give[s] rise to an inference of discriminatory motive." Opp. at 7-8. It is not clear whether Plaintiffs claim that TWC changed its position from an agreement to carry Plaintiffs' channels to a refusal to do so, or that the alleged delegation of TWC's carriage decision-making raises an inference of intentional discrimination. Both theories of discrimination are implausible, failing to rise beyond utter speculation. Plaintiffs cannot satisfy their pleading burden by pointing to innocuous conduct and then simply declaring it was racially motivated.

Plaintiffs' contention that TWC changed a "yes" to a "no" during

negotiations with ESN is not supported by the allegations in the Complaint. Plaintiffs allege that ESN and TWC were in "advanced negotiations." Compl. ¶ 57. A negotiation is certainly not an agreement to contract. The Complaint does not include a single allegation that TWC agreed to carry ESN's channels, such that TWC's decision to end negotiations was inconsistent with its established practice.

Plaintiffs' argument that TWC changed an established practice by delegating its channel carriage decision as to ESN is equally unsupported. As a threshold matter, the allegation that an unnamed TWC board member told ESN that TWC delegated its channel carriage decision-making to Comcast in and of itself is vague and conclusory. The allegation is not supported by any details or factual enhancement that *Iqbal* and *Twombly* demand. Plaintiffs do not allege which ESN employee heard the statement or in what context the board member allegedly made the statement. Despite TWC's specific requests, ESN has failed to disclose the identity of this unnamed board member and, thus, there are no facts to support this vague and conclusory allegation. Plaintiffs argue that any requirement to offer further factual enhancement of this statement impermissibly imposes Rule 9(b)'s heightened pleading standard. Not so. *Iqbal* and *Twombly* require the pleading of facts, not conclusory assertions. Without further context, Plaintiffs' allegation is too vague to discern an agreement by TWC to delegate channel carriage decision-making to Comcast.

Even if Plaintiffs had pleaded the missing factual detail regarding this alleged statement, the alleged delegation of all channel carriage decision-making does not raise an inference of discrimination. As alleged, the then-pending merger with Comcast was the only catalyst for TWC's alleged delegation of channel carriage responsibility—racial animus was never a factor. In their Opposition, Plaintiffs rely on a line of cases stating that a departure from an "established practice" creates an inference of discriminatory intent. *See Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir. 1996) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429

- 3 -

Americas 90570267

U.S. 252, 267 (1977). These two cases, however, found a departure from an established practice with a much more detailed factual record. Here, Plaintiffs do not allege that TWC departed from an established practice of making its own channel carriage decisions in its negotiations with ESN due to an invidious purpose such as racial discrimination. Rather, Plaintiffs allege TWC delegated *all* channel carriage decision-making and, thus, TWC did not treat ESN differently because it is African-American owned.

The Complaint does not include a single fact indicating that TWC treated ESN differently—in other words, that it delegated channel carriage decisions to Comcast for negotiations with African-American owned media companies, but maintained a different established practice for media companies that were not owned by African Americans. That is not the gist of the Complaint. The Complaint simply noted that the delegation of channel carriage decision-making was a consequence of the then-pending merger, not a consequence of racial bias, racial animus, or even the specific negotiations with ESN. Plaintiffs' sole theory of intentional discrimination against TWC is therefore baseless, lacking any factual support in the Complaint.

### B. Plaintiffs Fail to Allege an Agency Relationship to Impute Comcast's Alleged Practices on TWC

Although Plaintiffs now attempt to argue that TWC's alleged delegation of contracting rights was an act of intentional discrimination, the thrust of their Complaint focuses on Comcast as the actor—not TWC. Compl. ¶¶ 56-57. Plaintiffs cannot state a section 1981 claim against TWC for the actions of a third party without alleging an agency relationship. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). Plaintiffs do not allege any such agency relationship.

As Plaintiffs acknowledge, a plaintiff must "allege facts from which an agency relationship may be inferred." Opp. at 10. As such, a plaintiff must allege

- 4 -

Americas 90570267

the elements of an agency relationship: "consent by one person to another to act on his behalf and subject to his control." *Gen. Bldg. Contractors*, 458 U.S. at 392. Here, Plaintiffs fail to plead the essential second element of agency: control.

The Complaint fails to imply, let alone directly allege, that Comcast acted subject to TWC's control or vice-versa. When a claim fails to allege the necessary elements of the principal-agency relationship, it fails as a matter of law and may be dismissed. *See Stribling v. Concord Vill., Inc.*, 2011 WL 3648280, at *3-4 (D. Ariz. Aug. 19, 2011) (granting motion to dismiss a Title VII claim in part for failing to plead the elements of agency). Because Plaintiffs neither allege acts of intentional discrimination, nor plead facts to establish the elements of an agency relationship, this Court should dismiss Plaintiffs' section 1981 claim.

### III. PLAINTIFFS UNNECESSARILY OBFUSCATE THE PLEADING STANDARD

Because Plaintiffs assert nothing more than vague and conclusory allegations against TWC, they spend considerable time obfuscating the pleading standard: first arguing that a lower pleading standard applies to discrimination cases and then that TWC advocates an impermissibly high pleading burden. Plaintiffs are incorrect on both grounds. *Iqbal* and *Twombly* require that Plaintiffs plead adequate *facts* to state a plausible claim for relief. "'[N]aked assertion[s]' devoid of 'further factual enhancement,'" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs argue that the pleading standard is lower in a discrimination case, and rely heavily on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). *Swierkiewicz*, a pre-*Twombly* case, contains language interpreting the liberal notice pleading standard under *Conley v. Gibson*, 355 U.S. 41 (1957). Plaintiffs misleadingly cite such language to create the illusion that a lower pre-*Twombly* pleading standard applies. But no such lower pleading standard exists for

- 5 -

discrimination cases.[1] *See, e.g., Hung Duong Nguon v. Geragos*, 2011 WL 2173640, at *2, 4 (C.D. Cal. Jan. 26, 2011) (applying *Iqbal/Twombly* pleading standard to a section 1981 claim). Moreover, *Iqbal* was a discrimination case. Plaintiffs' attempt to lower the pleading standard only underscores the weakness of their allegations.

In similar fashion, Plaintiffs also argue incorrectly that TWC's motion imposes an impermissibly high pleading burden, requiring Plaintiffs to prove elements of the *McDonnell Douglas* prima facie case. TWC's motion to dismiss demonstrated that, under *Iqbal* and *Twombly*, Plaintiffs' conclusory allegations fail to establish even an inference of discrimination by anyone associated with TWC. TWC never advanced the argument that the *McDonnell Douglas* prima facie test applies at the pleading stage. TWC simply noted, as an example only, that Plaintiffs fail to allege facts that could establish even an inference of discrimination. Plaintiffs' two pages of analysis attempting to show that the prima facie test does not apply at the pleading stage serve no purpose.

Plaintiffs then spend nearly three pages disputing one line from TWC's motion to dismiss, namely that "Plaintiffs must allege 'facts tending to exclude the possibility that [an] alternative explanation is true.'" Motion at 6 (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Plaintiffs argue that TWC advocates for a heightened pleading standard, inappropriate for a motion to dismiss, and *Century Aluminum* is distinguishable. Opp. at 13-16. Plaintiffs' assertions are incorrect.

---

[1] *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045 (9th Cir. 2012) and *United States v. Union Auto Sales, Inc.*, 490 F. App'x 847 (9th Cir. 2012), cited in the Opposition, do not support Plaintiffs' assertion that a more liberal pleading standard applies to discrimination cases in the Ninth Circuit. Both cases discuss and apply the *Iqbal* and *Twombly* pleading standard. *Sheppard*, 694 F.3d at 1049-50; *Union Auto Sales, Inc.*, 490 F. App'x at 848, 851. The plaintiffs in those cases survived a motion to dismiss because they alleged specific facts amounting to a plausible inference of racial discrimination. In *Sheppard*, for example, the plaintiff alleged facts for each element of the *McDonnell Douglas* prima facie case. Here, Plaintiffs fall short of pleading a plausible discrimination claim.

*Century Aluminum* relied on *Iqbal*, noting that determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Century Aluminum*, 729 F.3d at 1107 (quoting *Iqbal*, 556 U.S. at 679). Like the facts in that case, common sense dictates that a logical alternative explanation underlies Plaintiffs' claims: TWC made a business decision not to carry ESN's programming—a decision also protected by its free speech rights under the First Amendment. As noted above, Plaintiffs' single conclusory allegation that TWC delegated all channel carriage decision-making responsibility to Comcast does not lead to a rational inference of discriminatory intent. Plaintiffs' allegations against TWC are so scant and conclusory that they necessitate some factual assertion tending to exclude the common sense business explanation. The Complaint alleges no such facts.

The pleading standard for Plaintiffs' section 1981 claim is set forth in *Iqbal*, *Twombly*, and their progeny. Plaintiffs' attempt to obfuscate this standard with nearly five pages of analysis serves only as a distraction from their inability to plead intentional discrimination by TWC.

### IV. PLAINTIFFS' SECTION 1981 CLAIM IS BARRED BY THE FIRST AMENDMENT

In addition to Plaintiffs' failure to plead a claim for racial discrimination, the First Amendment bars the single section 1981 claim against TWC. As the Supreme Court recognizes, a cable operator, like TWC, "exercise[s] editorial discretion over which stations or programs to include in its repertoire." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994) (internal quotation marks and citations omitted); *accord Comcast Cable Commc'ns, LLC v. FCC*, 717 F.3d 982, 993 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("Just as a newspaper exercises editorial discretion over which articles to run, a video programming distributor exercises editorial discretion over which programming networks to carry and at what level of

- 7 -

Americas 90570267

1  carriage."). Accordingly, the First Amendment protects TWC's decision whether to
2  carry ESN's channels. Tellingly, Plaintiffs fail to address *Comcast Cable*
3  *Communications*, which is directly on point, and cite, but do not discuss, *Turner*.
4        In attempting to respond to these First Amendment concerns, Plaintiffs rely
5  exclusively on *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
6  515 U.S. 557 (1995), and mischaracterize TWC as a mere passive conduit for
7  television programming. Opp. at 16-17. On that basis, Plaintiffs conclude that
8  TWC's First Amendment rights are either nonexistent or limited in this context.
9  But Plaintiffs' reliance on *Hurley* is misplaced.
10       The question of whether a cable operator can assert a First Amendment
11 defense to a section 1981 discrimination claim was not before the Court in *Hurley*.
12 In fact, *Hurley* addresses cable operators' First Amendment rights only in *dicta*—
13 and that *dicta* is far more harmful than helpful to Plaintiffs' arguments. For
14 example, the Court in *Hurley* affirmed that "[c]able operators . . . are engaged in
15 protected speech activities even when they only select programming originally
16 produced by others." 515 U.S. at 570. The Court similarly noted that "First
17 Amendment protection" does not "require a speaker to generate, as an original
18 matter, each item featured in the communication." *Id*. While the Court in *Hurley*
19 suggested that cable operators' speech rights may be more limited than those of
20 other "speakers," it based that distinction on the now outdated notion that the
21 government has a compelling reason to protect consumers from a cable operator's
22 "bottleneck monopoly" power. *Id*. at 575, 577; *Turner Broad. Sys., Inc. v. FCC*,
23 512 U.S. 622, 661 (1994) (explaining the "bottleneck monopoly power" exercised
24 by cable operators justifies tailored government regulation).
25       In the twenty years since *Hurley*, the video programming distribution
26 marketplace has changed dramatically, especially with the rapid growth of satellite
27 and Internet providers. *Comcast Cable Commc'ns, LLC*, 717 F.3d at 993-94. "In
28 today's highly competitive market, neither Comcast nor any other video

- 8 -

programming distributor possesses market power in the national video programming distribution market." *Id.* at 994; *see also Agape Church, Inc. v. FCC*, 738 F.3d 397 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("[T]he cable 'bottleneck monopoly' . . . no longer exists—and, as a result, . . . infringements on cable operators' editorial discretion no longer can withstand First Amendment scrutiny."); *Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009) ("Cable operators . . . no longer have the bottleneck power over programming that concerned Congress in 1992."). In short, the facts that led the Court in *Hurley* to make its *dicta* observation concerning the scope of a cable operator's First Amendment rights are no longer operative. *Hurley*, therefore, places no limitation on TWC's First Amendment rights.

The analysis for determining whether the First Amendment bars a section 1981 claim is no different for cable operators than it is for any other entity that holds editorial discretion over the selection of content, such as a television producer or a newspaper publisher. As explained in TWC's motion to dismiss, the same logic that applied in *Claybrooks v. American Broadcasting Companies, Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012) (television producers) and *McDermott v. Ampersand Publishing, LLC*, 593 F.3d 950 (9th Cir. 2010) (newspaper publisher)—both cases where the court dismissed a section 1981 claim and a labor discrimination claim, respectively, on First Amendment grounds—applies in the context of a cable operator. TWC's editorial discretion is readily apparent here, where the underlying facts of the claim surround ESN's unsuccessful attempt to convince TWC to carry its programming. Plaintiffs' lawsuit is a non-permissible use of the judicial system in an attempt to force TWC to contract with and carry ESN's channels and an assault on TWC's First Amendment rights. The Complaint should be dismissed with prejudice.

DEFENDANT TWC'S REPLY BRIEF

Americas 90570267

## V. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS IMPROPER AND NAAAOM SHOULD BE DISMISSED FOR LACK OF STANDING

The Court should strike Plaintiffs' "obey the law" injunction because it does not satisfy the required level of specificity and detail outlined in Federal Rule of Civil Procedure 65(d). Plaintiffs claim that their injunction is valid because it seeks to prohibit TWC from "racially discriminating against a particular, identifiable group" in contracts for carriage and advertising. Opp. at 18. Other than narrowing the category of race (*i.e.*, "100% African-African owned media companies"), the requested relief offers nothing more than the express mandate of section 1981. The requested injunction serves no purpose, and its vague requirement to "prohibit discrimination" fails to account for "the seriousness of the consequences which may flow from a violation of an injunctive order." *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897 (5th Cir. 1978) (holding "[t]he word 'discriminating,' . . . is too general" and striking a general "obey the law" injunction).

Moreover, Plaintiffs' prayer for injunctive relief does not seek to prohibit TWC from doing anything; it only seeks to prohibit *Comcast* from discriminating. Compl. at 28, Prayer ¶ 2. With the proposed merger terminated and Plaintiffs unable to continue to attempt to tie Comcast's alleged conduct to TWC prospectively, there is no basis for a request for injunctive relief against TWC. This unnecessary prayer for injunctive relief merely attempts to keep NAAAOM in a lawsuit in which it has no actual purpose.

Plaintiffs also attempt to distinguish between dismissing a prayer for injunctive relief on a motion to dismiss and dismissing one at a later stage in the case. Opp. at 18-19. Plaintiffs fail to cite a single case or provide any rationale to support their position, and for good reason: courts do strike claims for obey the law injunctions on a motion to dismiss. *See, e.g., Elend v. Sun Dome, Inc.*, 370 F. Supp. 2d 1206, 1211 (M.D. Fla. 2005) (striking an "obey the law" injunction on a motion

to dismiss); *Rowe v. N.Y. State Div. of the Budget*, 2012 WL 4092856, at *7 (N.D.N.Y Sept. 17, 2012) (same).

The Court should also dismiss NAAAOM due to prudential concerns. NAAAOM has one member, and the one member, ESN, is in the best position to assert its own claims. Once again, Plaintiffs attempt to draw an arbitrary line, oddly asserting that prudential concerns with organizational plaintiffs only apply to claims brought under the Americans with Disabilities Act. Opp. at 19-20.

The test for associational standing derives from *Hunt v. Washington State Apple Advertising Commission*, which included an additional element of prudential concern to ensure "administrative convenience and efficiency." 432 U.S. 333, 343 (1977). *Hunt* was not an ADA case, and this element of prudential concern applies in all types of claims involving organizational plaintiffs. *Id.* at 335 (creating the required element of prudential concern in a claim under the Commerce Clause); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014) (dismissing an organizational plaintiff in a section 1983 claim due to prudential concerns). Permitting NAAAOM to litigate on behalf of ESN, when ESN is already a party to the lawsuit, "does not fulfill the Supreme Court's guidance to focus on 'administrative convenience and efficiency' in determining prudential standing." *Id.* Because NAAAOM does not seek proper relief, and adds nothing to this litigation filed by its only member, this Court should dismiss NAAAOM.

## VI. **CONCLUSION**

Plaintiffs fail to allege facts that TWC committed any act of intentional discrimination and, therefore, do not state a section 1981 claim. In addition, the First Amendment bars Plaintiffs' claim because channel carriage decisions are protected speech. Therefore, the Court should dismiss the Complaint against TWC. Alternatively, the Court should dismiss or strike Plaintiffs' prayer for injunctive relief and, consequently, dismiss NAAAOM for lack of standing.

- 11 -

|  |  |
|---|---|
| Dated: May 22, 2015 | WHITE & CASE LLP |
|  | By: */s/ Bryan A. Merryman* <br> Bryan A. Merryman |
|  | Attorneys for Defendant <br> TIME WARNER CABLE INC. |