1 | MIGUEL A. ESTRADA, *Pro Hac Vice*
   mestrada@gibsondunn.com
2 | GIBSON, DUNN & CRUTCHER LLP
3 | 1050 Connecticut Avenue, N.W.
   Washington, DC 20036-5306
   Telephone: 202.955.8257
4 | Facsimile: 213.530.9616

5 | Attorneys for Defendants
   COMCAST CORPORATION; NATIONAL
6 | ASSOCIATION FOR THE ADVANCEMENT
   OF COLORED PEOPLE; NATIONAL URBAN
7 | LEAGUE, INC.; AL SHARPTON; NATIONAL
   ACTION NETWORK, INC.; MEREDITH
8 | ATTWELL BAKER

9 | [Additional counsel listed on next page.]

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12 |

13 | NATIONAL ASSOCIATION OF AFRICAN-AMERICAN OWNED MEDIA, a California limited liability company; and ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation,

CASE NO. 2:15-cv-01239-TJH-MAN

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT BY DEFENDANTS COMCAST CORPORATION, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL URBAN LEAGUE, INC., AL SHARPTON, NATIONAL ACTION NETWORK, INC., AND MEREDITH ATTWELL BAKER

16 | Plaintiffs,

17 | v.

18 | COMCAST CORPORATION, a Pennsylvania corporation; TIME WARNER CABLE INC., a Delaware corporation; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, a New York corporation; NATIONAL URBAN LEAGUE, INC., a New York corporation; AL SHARPTON, an individual; NATIONAL ACTION NETWORK, INC., a New York corporation; MEREDITH ATTWELL BAKER, an individual; and DOES 1 through 10, inclusive,

Judge: Hon. Terry J. Hatter, Jr.
Hearing Date: June 8, 2015
Time: UNDER SUBMISSION
Courtroom: 17

28 | Defendants.

DOUGLAS FUCHS, SBN 196371
  dfuchs@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
  jcripps@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

MICHAEL R. HUSTON, SBN 278488
  mhuston@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.887.3793
Facsimile:   213.530.9604

Attorneys for Defendants
COMCAST CORPORATION; NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE; NATIONAL
URBAN LEAGUE, INC.; AL SHARPTON;
NATIONAL ACTION NETWORK, INC.;
MEREDITH ATTWELL BAKER


PETER C. HARVEY, *Pro Hac Vice*
  pcharvey@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  212.336.2000
Facsimile:   212.236.2222

Attorneys for Defendant
NATIONAL URBAN LEAGUE, INC.

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

Case 2:15-cv-01239-TJH-MAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 5

   A.   The Court Lacks Personal Jurisdiction Over NUL, The NAACP, NAN, Rev. Sharpton, And Ms. Baker ................................................ 5

      1.   The MOU Did Not Specifically "Target" ESN ........................... 6

      2.   The *Calder* "Effects" Test Is Not Satisfied By The Mere Fact That ESN Was Allegedly Injured In California ............................. 7

   B.   Ms. Baker Is Immune From Plaintiffs' Claims ...................................... 10

   C.   *Twombly* And *Iqbal* Set Forth The Applicable Pleading Standard ......... 12

   D.   None Of The Allegations In The Complaint Plausibly Show Race Discrimination ...................................................................................... 16

      1.   The Alleged Statement About Bob Johnson Does Not Plausibly Show A Policy Of Discrimination ............................... 16

      2.   Plaintiffs' Assertions About How The MOU Works "In Practice" Are Conclusory And Contrary To The Facts Alleged In The Complaint ............................................................ 18

   E.   Plaintiffs Have Failed To Allege Any Plausible Conspiracy Claim ........ 21

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011)...................................................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................... 13, 16, 20, 24

*Barbera v. WMC Mortgage Corp.,*
    No. 04-3738, 2006 WL 167632 (N.D. Cal. Jan. 19, 2006) ...................................... 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................... 16, 22

*Butz v. Economou,*
    438 U.S. 478 (1978)...................................................................................... 10

*Calder v. Jones,*
    465 U.S. 783 (1984)........................................................................................ 6

*Eclectic Properties East, LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ...................................................................... 13

*Enlow v. Salem-Keizer Yellow Cab Co.,*
    389 F.3d 802 (9th Cir. 2004) ...................................................................... 17

*Garcia v. City of King City,*
    No. 14-1126, 2015 WL 1843944 (N.D. Cal. Apr. 8, 2015) ................................... 12

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,*
    442 U.S. 366 (1979)...................................................................................... 21

*In re Century Aluminum Co. Sec. Litig.,*
    729 F.3d 1104 (9th Cir. 2013) ............................................................ 14, 15, 24

*Landers v. Quality Commc'ns, Inc.,*
    771 F.3d 638 (9th Cir. 2015) ...................................................................... 14

*Mansour v. Superior Court,*
    38 Cal. App. 4th 1750 (1995) ........................................................................ 9

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'                   ii                   Case 2:15-cv-01239-TJH-MAN
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)................................................................ 12

*Peloza v. Capistrano Unified Sch. Dist.*,
  37 F.3d 517 (9th Cir. 1994) ................................................. 22

*Pérez-Sánchez v. Pub. Bldg. Auth.*,
  531 F.3d 104 (1st Cir. 2008) ................................................ 23

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................ 6, 7, 8

*Savage v. City of Berkeley*,
  No. 05-02378, 2007 WL 911868 (N.D. Cal. Mar. 23, 2007)................. 23

*Sheppard v. David Evans & Assocs.*,
  694 F.3d 1045 (9th Cir. 2012) ............................................. 14

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................ 13, 14

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)......................................................... 13

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999) ............................................... 23

*United States v. Union Auto Sales, Inc.*,
  490 F. App'x 847 (9th Cir. 2012)........................................... 14

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)................................................... 6, 8, 9

*Zamsky v. Hansell*,
  933 F.2d 677 (9th Cir. 1991) .......................................... 10, 11

**Statutes**

42 U.S.C. § 1981........................................................... 16

42 U.S.C. § 1985(3)..................................................... 21, 23

**Regulations**

47 C.F.R. § 1.1206 (2011) ................................................ 11

Gibson, Dunn & Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs' Complaint by Defendants Comcast, NAACP, NUL, Sharpton, NAN, and Baker       iii       Case 2:15-cv-01239-TJH-MAN

# INTRODUCTION

This Court should end this misguided and baseless lawsuit because it lacks jurisdiction over most of the Defendants, and because Plaintiffs have failed to plead any plausible claim for intentional discrimination, let alone a plausible conspiracy among civil rights leaders, a public company, and a government official to facilitate discrimination.  In fact, although Plaintiffs insist they have "direct evidence of discrimination," Opp. at 1, their story has not improved in the retelling:  Plaintiffs claim that some unidentified Comcast executive at some unspecified time stated that Comcast was "not trying to create any more Bob Johnsons"—which, Plaintiffs say, evinces racial animus against "Black billionaires," *id.*  That Plaintiffs provide zero detail on the identity of the speaker or the surrounding circumstances is sufficient to show that this alleged statement is not "direct evidence" of anything.  But it should be obvious, in any event, that no party in an arms-length commercial relationship sets out to enrich *the other side*—this everyday business reality does not remotely amount to "discrimination."  That is especially the case here, where Plaintiffs' theory of "discrimination" is that Comcast has "influenced" a public official and corruptly persuaded the country's oldest and most respected civil rights organizations to "whitewash its illegal discrimination against ESN." *Id.* at 1, 7.  To say that the Complaint's allegations are "implausible" under the applicable pleading standard would be a colossal understatement.  The bottom line is that the Complaint suffers from multiple, independent defects, and nothing in Plaintiffs' Opposition—which distorts both the law and the facts Plaintiffs have alleged—can forestall its dismissal.

Tacitly recognizing that they have failed to allege facts sufficient to state any plausible claim, Plaintiffs devote much of their Opposition to attacking the applicable pleading standard that governs all civil actions in federal court.  While Plaintiffs suggest there is a lower pleading standard for discrimination claims, *Iqbal* itself involved claims of intentional race discrimination.  And *Iqbal* holds, as the Ninth Circuit has confirmed, that where the allegations in the complaint—stripped of its legal

conclusions—are just as consistent with an obvious, non-discriminatory explanation, the plaintiff has failed to plead a plausible claim of discrimination.  Plaintiffs here have not plausibly pled discrimination under this standard, as the Complaint itself alleges a number of obvious, non-discriminatory reasons for Comcast's decision not to carry ESN's channels.

Plaintiffs also refer to diversity commitments by Comcast in 2010 that are memorialized in a Memorandum of Understanding ("MOU") with NUL, the NAACP, and NAN.  As Plaintiffs now concede, the MOU on its face reflects the creation of *additional* opportunities for African Americans to contract with Comcast:  "[O]n its face, the MOU purports to *advance* programming opportunities for 'majority or substantial' African American-owned media companies."  Opp. at 6 (emphasis added). Yet despite this critical concession, Plaintiffs advance a series of implausible and unsupported assertions in an effort to twist something that was clearly designed to benefit African Americans into a nefarious plot intended to "whitewash . . . illegal discrimination against ESN."  *Id.* at 1.  Plaintiffs' baseless speculation regarding how the MOU "really" worked does nothing to render their claims any more plausible.

Plaintiffs allege that "the MOU says one thing while the signatories knew and agreed that it meant another," *id.* at 20, but they have not alleged any facts to support their conclusory assertion that NUL, the NAACP, NAN, Rev. Sharpton, or Ms. Baker ever heard, or agreed, that the MOU would not function just as it is written.  That these Defendants have not "take[n] issue" with Comcast's implementation of the MOU is far from evidence of an overt act in furtherance of a conspiracy.  The alleged inaction is just as consistent with a variety of other obvious, non-discriminatory explanations, including the belief that Comcast has lived up to its obligations under the MOU—which not only is the reality but, more important at this stage, also is not contradicted by any well-pleaded factual allegations in the Complaint.  Moreoever, even if it were proper to assume that the "MOU was a sham from the outset," *id.* at 2, that would at

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

2

Case 2:15-cv-01239-TJH-MAN

1    most establish that Comcast had failed to live up to its commitments to promote

2    diversity—not that it had engaged in any discrimination against African Americans

3    generally, much less against ESN specifically.

4         Plaintiffs also label the opportunities created by the MOU as an "inferior"

5    process, but that bald assertion—which is contradicted by the text of the MOU itself—

6    is also unsupported by any *facts* demonstrating that the MOU process actually was

7    inferior.  And any suggestion that African American-owned companies are limited to

8    the MOU process is put to rest by the facts that Plaintiffs *do* plead.  For example,

9    Plaintiffs admit that another "100% African American-owned" network—the Africa

10   Channel—obtained carriage with Comcast *outside* of the MOU process.  Compl. ¶ 7.

11        Plaintiffs' jurisdictional arguments—which are also based on their unsupported

12   distortion of the MOU—also fall flat.  In the face of overwhelming evidence that NUL,

13   the NAACP, NAN, Rev. Sharpton, and Ms. Baker are not subject to personal

14   jurisdiction in California, Plaintiffs have conjured up a new theory not found anywhere

15   in the Complaint, and which is wholly unsupported by the record: that ESN was

16   somehow specifically targeted by the MOU.  *See* Opp. at 32 ("ESN was clearly the

17   target of [Defendants'] conduct").  The idea that Defendants went to elaborate lengths

18   in negotiating and entering the MOU so that Comcast could, at some later date,

19   discriminate against ESN by refusing to carry its channels, to put it mildly, is far-

20   fetched.  Nothing in the MOU or the surrounding context supports Plaintiffs' assertions

21   that the MOU was designed to discriminate against ESN by denying carriage—much

22   less that the MOU was directed specifically at California—as opposed to assisting

23   African American-owned businesses throughout the nation.  And Plaintiffs plead no

24   facts that even remotely suggest the Defendants discussed or otherwise targeted ESN

25   during negotiation of the MOU or, in the case of Ms. Baker, during the FCC's

26   approval of the Comcast/NBCUniversal transaction, or did anything else that was

27   expressly aimed at California.

28

1   Finally, Plaintiffs offer nothing but conclusory charges of impropriety against

2   Ms. Baker that are insufficient to overcome her immunity from suit as a government

3   official acting in a judicial capacity.  When the conclusory aspersions are stripped

4   away, the sole basis for Plaintiffs' claims against Ms. Baker are their allegations that

5   she voted to approve the Comcast/NBCUniversal transaction (along with three other

6   FCC Commissioners), and then accepted a position at Comcast months later.  *See* Opp.

7   at 7.  But the FCC conducted its review of the Comcast/NBCUniversal merger using

8   an open process, on a public record, governed by rules to ensure its fairness, which is

9   why Ms. Baker is entitled to absolute judicial immunity.  In any event, Ms. Baker is at

10  least entitled to qualified immunity, as Plaintiffs have failed to allege that she

11  committed a clearly established violation of law in her role as an FCC Commissioner.

12  The Complaint contains not a single fact that suggests Ms. Baker intended to join a

13  conspiracy to discriminate on the basis of race against ESN.  The mere fact that Ms.

14  Baker briefly took a job with Comcast after leaving public service is not evidence of

15  illegal conduct, and it certainly is not sufficient to support Plaintiffs' rank speculation

16  that she was "influenced" to vote in favor of Comcast/NBCUniversal transaction.

17  The conclusory assertions that riddle Plaintiffs' Complaint are scurrilous,

18  defamatory, and false.  More important at this stage, when these conclusions are

19  stripped away, the remaining *factual* allegations in Plaintiffs' Complaint fail to come

20  close to stating a plausible claim for intentional discrimination or a conspiracy to

21  discriminate.  Plaintiffs should not be granted leave to amend their Complaint, as they

22  have not offered so much as a hint about what factual allegations they would add to

23  salvage their case, and there is no realistic possibility that Plaintiffs could plead new

24  facts that would render plausible their fantastical claims.  Further amendment would

25  thus be futile, and the Court should dismiss this action with prejudice.

26

27

28

Reply Memo ISO Motion to Dismiss Plaintiffs' Complaint by Defendants Comcast, NAACP, NUL, Sharpton, NAN, and Baker

4

Case 2:15-cv-01239-TJH-MAN

# ARGUMENT

Plaintiffs' Complaint fails for multiple, independent reasons:  The Court lacks personal jurisdiction over several Defendants; Ms. Baker has immunity from Plaintiffs' claims; and Plaintiffs have failed to state any claim of racial discrimination or conspiracy to discriminate on the basis of race.  Plaintiffs have failed to rebut these arguments in their Opposition, and thus the Complaint should be dismissed.

## A.    The Court Lacks Personal Jurisdiction Over NUL, The NAACP, NAN, Rev. Sharpton, And Ms. Baker

There is no basis for the exercise of personal jurisdiction over NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker, as they are all out-of-state Defendants that are not even *alleged* to have done anything in or directed towards California.  *See* Mot. at 8–16.  Plaintiffs' attempts to manufacture some basis for personal jurisdiction are unsupported by the record and their own allegations, and are premised on a view of personal jurisdiction that is contrary to the settled principles recently articulated by both the Supreme Court and the Ninth Circuit.

Significantly, Plaintiffs concede—as they must—that these organizations and individuals lack sufficient contacts with California to warrant the exercise of general jurisdiction.  Opp. at 29 n.10.  Instead Plaintiffs limit themselves solely to specific personal jurisdiction, based on a new theory not pled in the Complaint: that NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker somehow "specifically targeted ESN." Opp. at 31–33 & n.11.  But whether this Court has personal jurisdiction over these Defendants depends on the theory actually alleged in the Complaint, not new allegations Plaintiffs have asserted for the first time in their Opposition.  *See, e.g.*, *Barbera v. WMC Mortgage Corp.*, No. 04-3738, 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006) ("'It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.'" (citation omitted)).  Moreover, the record is clear that these Defendants did not do anything that "specifically targeted ESN," much less anything that could constitute the facilitation of racial discrimination against ESN.

In any event, Plaintiffs' theory that ESN was the target of the MOU, even were it true, is not enough to support the exercise of specific personal jurisdiction under the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), as clarified by *Walden v. Fiore*, 134 S. Ct. 1115 (2014), and *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015).[1]

## 1.    The MOU Did Not Specifically "Target" ESN

Plaintiffs' jurisdictional theory has been reduced to the fact-barren claim that NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker "executed and approved of a MOU that Comcast would use to interfere with the California activities (negotiating and contracting for carriage) of a California resident (ESN)," and that "ESN was clearly the target" of this "discriminatory process." Opp. at 31–32; *see also id.* at 3 ("Through the MOU with Comcast, they co-created a contracting process that targets California-based ESN, the ***only*** 100% African American–owned multi-channel provider in the United States.").[2] But the MOU itself contradicts the suggestion that any particular entity, let alone ESN specifically, was targeted: it makes no mention of either ESN or "100% African American-owned" media businesses—a racial category that Plaintiffs have concocted for this lawsuit. Nor is there anything to suggest that the MOU contracting process was specifically focused on 100% African American-owned multi-channel providers—a class which, according to Plaintiffs, consists solely of ESN itself—such that the Court could infer that the MOU specifically targeted ESN.

---

[1] Plaintiffs erroneously assert that "Defendants make no attempt to analyze *Calder*'s elements or apply them here." Opp. at 30. In fact, Defendants specifically discussed and applied *Calder* in their motion, as well as the most recent Supreme Court and Ninth Circuit authority interpreting its test. *See* Mot. at 14–16.

[2] Plaintiffs improperly lump Ms. Baker into their MOU-focused theory of personal jurisdiction, despite the lack of any allegations or evidence that she had anything whatsoever to do with the MOU, beyond the mere fact that the executed MOU was submitted to the FCC while Ms. Baker was an FCC Commissioner.

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker                    6                    Case 2:15-cv-01239-TJH-MAN

To the contrary, the MOU reveals on its face that it was broadly focused on a wide range of commitments designed "to enhance the policies and programs by which African Americans may realize greater participation" in various aspects of Comcast's business and across "all communities in which Comcast . . . do[es] business." Fuchs Decl., Ex. A at 2. And with respect to programming, the MOU's commitments—which provided additional, not fewer, opportunities to African Americans—were not aimed specifically at ESN or 100% African American-owned multi-channel providers, but instead to the significantly broader class of "linear video programming services in which African Americans have a majority or substantial ownership interest." *Id.* at 9.

In short, Plaintiffs' assertion that the MOU specifically targeted ESN in California—as opposed to African American-owned businesses generally throughout the United States—is contradicted by the very document on which they rely, and that they concede provides benefits to African Americans on its face. Plaintiffs' targeting theory is nothing more than a post-hoc justification of their legally unsupportable attempt to sue in California out-of-state Defendants who did nothing in California and directed nothing towards California that is related to the claims in this action.

### 2. The *Calder* "Effects" Test Is Not Satisfied By The Mere Fact That ESN Was Allegedly Injured In California

Even if the Court were to accept as true Plaintiffs' contention that ESN was the specific target of the MOU—despite the lack of any well-pleaded allegations to this effect, and the fact that the MOU itself contradicts that contention—Plaintiffs would still be unable to satisfy the *Calder* "effects" test. As the Ninth Circuit recently recognized in *Picot*, the Supreme Court has clarified that "[i]n applying this test, [courts] must 'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* at 1214 (quoting *Walden*, 134 S. Ct. at 1122) (third alteration in original). Thus, under *Walden* and *Picot*, "a 'mere injury to a forum resident is not a sufficient connection to the forum'" to justify the exercise of specific personal jurisdiction. *Id.* (quoting *Walden*, 134 S. Ct. at 1124–

25).  As the Supreme Court held in *Walden*, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.  In this case, the answer to that question is clear:  none of the alleged conduct of NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker had any connection to California beyond the happenstance of ESN's residency in California.

Plaintiffs' argument that, even after *Walden*, the location of an injury may still be "'jurisdictionally relevant' . . . [to] demonstrate that the defendant has 'formed a contact with the forum State'" does not change the jurisdictional analysis here.  Opp. at 32 (quoting *Walden*, 134 S. Ct. at 1125).  Nothing about ESN's alleged injury in California establishes that NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker formed any relevant connections to California.  ESN's alleged injury is "not the sort of effect" that is "tethered" to California because ESN "would have experienced" the same alleged injury regardless where it resided.  *Walden*, 134 S. Ct. at 1125.  Like the forum injuries found insufficient to establish jurisdiction in *Walden* and *Picot*, ESN's alleged injury is "entirely personal to [it] and would follow [it] wherever [it] might choose to live or travel," and thus it is not "tethered to California in any meaningful way."  *Picot*, 780 F.3d at 1215.  And nothing about the MOU—which on its face was not specifically about ESN or California in any respect—was like "the broad publication of the forum-focused story in *Calder*" that created injuries uniquely tied to the forum State.  *Walden*, 134 S. Ct. at 1125.

Plaintiffs' bald allegation that *Comcast* "use[d]" the MOU to "interfere with the California activities (negotiating and contracting for carriage) of a California resident (ESN)," Opp. at 31, is also irrelevant to assessing whether this Court can exercise personal jurisdiction over NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker.  As *Walden* instructs, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."  134 S. Ct. at 1123.  Indeed, "to exercise

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

8

Case 2:15-cv-01239-TJH-MAN

jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," and this connection "must arise out of contacts that the 'defendant *himself*' creates." *Id.* at 1121–22 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Significantly, Plaintiffs do not allege that NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker had any involvement in the negotiations between Comcast and ESN, and the jurisdictional evidence in the record confirms that NUL, the NAACP, and NAN had no such involvement.  *See* Morial Decl. ¶¶ 11–12; Brooks Decl. ¶ 6; Ingram Decl. ¶ 7; *see also* Morial Decl. ¶ 10 ("Neither I nor any other NUL employee has ever had any discussions with any Comcast employee concerning the programming decisions made by Comcast or NBC Universal.").  Moreover, as Defendants pointed out in their motion and Plaintiffs make no effort to dispute, "California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party." *Mansour v. Superior Court*, 38 Cal. App. 4th 1750, 1760 (1995); *see also* Mot. at 16.  Comcast's alleged actions thus cannot be imputed to the other Defendants to establish personal jurisdiction.

Finally, Plaintiffs attempt to avoid the impact of *Walden* and *Picot* by emphasizing irrelevant purported factual distinctions.  *See* Opp. at 32–33 & n.11.  But both *Walden* and *Picot* contain critical interpretations of *Calder* that apply in all cases, not simply factually analogous settings.  And in any event, Plaintiffs' factual distinctions do not withstand scrutiny.  Plaintiffs note that in *Walden*, "the defendant's sole 'link' to the forum state (Nevada) was the fact that the plaintiffs happened to be Nevada residents; all of the conduct underlying the plaintiffs' claims took place outside Nevada." Opp. at 32.  But the same is true here with respect to NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker, as they are not alleged to have personally done anything in California—or anywhere else, for that matter—relevant to Plaintiffs' claims.  Plaintiffs similarly attempt to distinguish *Picot* on the basis that the

"allegedly tortious conduct consisted only of making statements to a non-California resident, from a place outside California," Opp. at 33 n.11, but all of the alleged conduct of NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker likewise took place outside of California.

In sum, the Court cannot permissibly exercise personal jurisdiction over NUL, the NAACP, NAN, Rev. Sharpton, and Ms. Baker, and they should be dismissed from this action under Rule 12(b)(2).

## B.   Ms. Baker Is Immune From Plaintiffs' Claims

Plaintiffs' claims against Ms. Baker independently fail because they are entirely premised on her actions as an FCC Commissioner—specifically, her vote in favor of the Comcast/NBCUniversal transaction—for which she has either absolute or qualified immunity. *See* Compl. ¶¶ 27, 63, 122; Mot. at 16–21. None of Plaintiffs' arguments against immunity is persuasive.

First, Ms. Baker is entitled to absolute immunity because her role as a federal official reviewing the Comcast/NBCUniversal transaction was functionally equivalent to that of a judge. Though Ms. Baker and the other FCC Commissioners were not required to conduct a *formal* adjudication, they nevertheless solicited public input, reviewed submissions, and produced a written decision based on a record. The FCC Commissioners also operated under rules designed specifically to protect the integrity of the process, *see* Mot. at 19, which is exactly the kind of "safeguard[ ]," similar to a judicial process, that the Supreme Court relied on in *Butz v. Economou*, 438 U.S. 478, 514 (1978), in support of judicial immunity for federal hearing examiners.

Plaintiffs contend that Ms. Baker is not entitled to absolute immunity because, rather than acting in a judicial capacity, the FCC Commissioners performed a role analogous to the non-immune state commissioners in *Zamsky v. Hansell*, 933 F.2d 677 (9th Cir. 1991). *See* Opp. at 25. But the state commission's examination of land-use plans in *Zamsky* bears little resemblance to the FCC's thorough, on-the-record review,

as an independent federal agency, of Comcast's multi-billion dollar acquisition of NBCUniversal. For example, the Ninth Circuit noted in *Zamsky* that many of the state commission's proceedings were not adversarial, *id.* at 679, whereas the Comcast/NBCUniversal transaction was the subject of multiple public comments, some of which opposed the transaction. And while FCC Commissioners are not "insulated from the agency that promulgates the rules to be applied," *id*, they *are* insulated by well-established rules from improper influence, including ex parte contact with any party. *See* 47 C.F.R. § 1.1206.

Second, even if Ms. Baker does not have absolute immunity from Plaintiffs' claims, qualified immunity nonetheless applies here. To avoid this form of immunity, Plaintiffs are required to plead a *clearly established* violation of law. *See, e.g.*, *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084–85 (2011). Yet instead of pleading any such violation of law, Plaintiffs focus on something that is obviously not illegal: the fact that Ms. Baker took a private-sector job with Comcast when her government service was completed. From this fact, Plaintiffs conclude that Ms. Baker was "influenced" to vote in favor of the Comcast/NBCUniversal transaction, which was purportedly "jeopardized" by "[o]pponents of the merger [who] voiced concerns about the lack of diversity." Compl. ¶¶ 27, 60–61; *see* Opp. at 27. Plaintiffs speculate that Ms. Baker may have discussed future employment with Comcast prior to voting on the transaction, but notably fail to allege a single fact about any such communication. *See* Compl. ¶¶ 27, 63, 122. Indeed, there are no facts alleged in the Complaint—beyond the mere fact that Ms. Baker took a position with Comcast, which is far from evidence of improper conduct—that provide any support for Plaintiffs' brazen assertion that Comcast "bribe[d]" Ms. Baker. Opp. at 27.

Plaintiffs' reliance on *Garcia v. City of King City*, No. 14-1126, 2015 WL 1843944 (N.D. Cal. Apr. 8, 2015), only confirms that the allegations against Ms. Baker do not suffice to plead around her immunity. *Garcia*—which is not a case about an

1   administrative adjudication—held that in order to a state a claim, "the plaintiff must

2   plead that the [officer] was either personally involved in the constitutional deprivation,

3   or that there was a sufficient causal connection between the [officer's] wrongful

4   conduct and the constitutional violation." *Id.* at *2.  Here, Plaintiffs do not allege that

5   Ms. Baker was personally involved in any discrimination—Plaintiffs say that *Comcast*

6   discriminated on the basis of race.  And there is obviously no causal connection

7   between Ms. Baker's vote in the Comcast/NBCUniversal transaction and Comcast's

8   decision to deny carriage to ESN.  To the extent that the FCC's approval of the

9   transaction could have had *any* impact on Comcast's carriage decisions—a point that

10  Plaintiffs' factual allegations do not establish—Ms. Baker's vote in that proceeding

11  would not have changed its outcome.  *See* Mot. at 18.  Therefore, because Plaintiffs

12  have not pled a causal connection between anything Ms. Baker did and any injury to

13  ESN, she remains entitled to qualified immunity.

14  **C.   *Twombly* And *Iqbal* Set Forth The Applicable Pleading Standard**

15       Plaintiffs desperately seek to avoid the applicable pleading standard set forth in

16  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

17  662 (2009), and the Ninth Circuit cases that have applied those decisions.  In so doing,

18  Plaintiffs claim that Defendants have asked this Court to apply a "heightened pleading

19  standard," to require Plaintiffs to "plead a prima facie case of discrimination" under

20  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and to force Plaintiffs to

21  allege facts that "exclude all possible non-discriminatory reasons for Comcast's refusal

22  to contract."  Opp. at 13.  Plaintiffs' characterizations of Defendants' motion and the

23  governing pleading standard are wrong.

24       Defendants' motion is not based on a "heightened pleading standard."  Opp. at

25  10.  It is rooted in the now well-established "plausibility" standard that the Supreme

26  Court adopted in *Twombly* and *Iqbal*.  Indeed, Defendants' motion to dismiss simply

27  applied the explicit instructions of the Supreme Court:  First, set aside the portions of

28

the Complaint that are not entitled to be presumed true, including "recitals of the
elements of a cause of action," "conclusory statements," and "legal conclusion[s]
couched as [ ] factual allegation[s]." *Iqbal*, 556 U.S. at 678; *see also Eclectic
Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014)
("We proceed in our analysis by removing conclusory statements of law from the
complaint."). That step includes removing allegations of discriminatory intent. *Iqbal*,
556 U.S. at 680–81. Second, determine whether the remaining factual allegations state
a plausible claim for relief. *Id.* at 679; *see also Starr v. Baca*, 652 F.3d 1202, 1216
(9th Cir. 2011) (holding that "the factual allegations that are taken as true must
plausibly suggest an entitlement to relief, such that it is not unfair to require the
opposing party to be subjected to the expense of discovery and continued litigation").
This second step requires the Court "to draw on its judicial experience and common
sense," *Iqbal*, 556 U.S. at 679, and to "consider an 'obvious alternative explanation'
for defendant's behavior," *Eclectic Properties*, 751 F.3d at 996 (quoting *Iqbal*, 556
U.S. at 682). When this framework is applied to Plaintiffs' Complaint, it is clear that
Plaintiffs have failed to state any plausible discrimination claim. *See* Mot. at 21–39.

Relying on a pre-*Twombly* and *Iqbal* decision, *Swierkiewicz v. Sorema N.A.*, 534
U.S. 506 (2002), Plaintiffs claim that there is a "liberal pleading standard for
discrimination cases" that is distinct from the standard that applies to other types of
claims. Opp. at 11. Not so. As the Supreme Court explained in *Iqbal*, Rule 8
"governs the pleading standard 'in all civil actions and proceedings in the United
States district courts,'" and thus "*Twombly* expounded the pleading standard for 'all
civil actions' and it applies to antitrust and *discrimination* suits alike." *Iqbal*, 556 U.S.
at 684 (quoting Fed. R. Civ. P. 1) (emphasis added; citation omitted). In fact, *Iqbal*
itself was a discrimination case. *See id.* at 668–69.

As for Plaintiffs' emphasis on *Swierkiewicz*, the Ninth Circuit has recognized
that decision "applied the original, more lenient version of Rule 8(a)" that governed

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

13

Case 2:15-cv-01239-TJH-MAN

1  prior to *Twombly* and *Iqbal*.  *Starr*, 652 F.3d at 1215.  Since that time, the Ninth

2  Circuit has consistently applied the *Twombly* and *Iqbal* framework, as those decisions

3  embody the Supreme Court's current, more demanding interpretation of Rule 8.  *See,*

4  *e.g.*, *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 640–41 (9th Cir. 2015)

5  (explaining distinction between the "[p]re-*Twombly* and *Iqbal*" and "post-*Twombly* and

6  *Iqbal*" pleading standard); *Eclectic Properties*, 751 F.3d at 996 (noting "the apparent

7  shift in the Supreme Court's analysis of Rule 8 pleading standards" towards "the 'more

8  demanding' *Twombly* and *Iqbal* standard"); *In re Century Aluminum Co. Sec. Litig.*,

9  729 F.3d 1104, 1107 (9th Cir. 2013) ("*Iqbal* and *Twombly* moved us away from a

10  system of pure notice pleading.").

11        Plaintiffs claim that the "Ninth Circuit has repeatedly reaffirmed the

12  applicability of *Swierkiewicz* to discrimination claims since the Supreme Court's

13  decisions in *Twombly* and *Iqbal*," but neither of the cases they cite supports their

14  contention that *Swierkiewicz*'s more liberal interpretation of Rule 8 has survived

15  *Twombly* and *Iqbal*.  Opp. at 11 (citing *Sheppard v. David Evans & Assocs.*, 694 F.3d

16  1045, 1050 n.2 (9th Cir. 2012); *United States v. Union Auto Sales, Inc.*, 490 F. App'x

17  847, 848 (9th Cir. 2012)).  Rather, *Sheppard* and *Union Auto Sales* hold only that

18  *Swierkiewicz* remains good law for the proposition that a plaintiff does not necessarily

19  have to plead facts establishing a *prima facie* case of discrimination under the

20  particular Title VII framework governing burden-shifting that the Supreme Court

21  established in *McDonnell Douglas*.  That aspect of *Swierkiewicz* is entirely distinct

22  from its interpretation of Rule 8, which has been superseded by *Twombly* and *Iqbal*.

23  The issue here is not whether Plaintiffs' allegations comply with *McDonnell Douglas*,

24  but whether Plaintiffs' factual allegations support a "plausible" claim of discrimination

25  within the meaning of *Twombly* and *Iqbal*.  They do not.

26        *Twombly* and *Iqbal* thus reflect the governing pleading standard.  And under this

27  standard, the Court must "consider an 'obvious alternative explanation' for defendant's

28

behavior" because "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Eclectic Properties*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 678, 682). Plaintiffs mischaracterize this required inquiry by denying that their Complaint must contain facts sufficient to "exclude *all* possible alternative explanations for the defendant's conduct." Opp. at 12 (emphasis added). But Defendants did not argue that Plaintiffs must exclude *all* possible alternative explanations. Rather, Defendants argued that Plaintiffs' "factual allegations . . . [did not] exclude[ ] the possibility of an alternative explanation that is *obvious* from the Complaint itself: As a business matter, Comcast did not think that ESN's channels had sufficient consumer interest or demand to warrant the costs that carriage of those channels would impose on Comcast." Mot. at 24 (emphasis added). And with respect to the MOU, Plaintiffs have failed to allege facts excluding the obvious explanation that the MOU was not part of a vast conspiracy to cover up discrimination, but rather exactly what it appears to be on its face: an effort to promote more diversity in channel carriage and other areas. Where, as here, there is an obvious alternative explanation for a defendant's behavior, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Century Aluminum*, 729 F.3d at 1108 (citation omitted).[3]

---

[3] Plaintiffs suggest *Century Aluminum* is distinguishable because there "are not two mutually exclusive possibilities" in this case. Opp. at 12. But at least two mutually exclusive alternatives are apparent on the face of Plaintiffs' Complaint: Either ESN was denied carriage because of legitimate business reasons (such as bandwidth limitations and lack of consumer demand), *see* Compl. ¶ 88, or ESN was denied carriage because of racial animus, as Plaintiffs claim (but fail to support with sufficient factual allegations).

Plaintiffs also suggest that they should be exempted from the requirements of
*Iqbal* and *Twombly* because they lack "information that is solely within Comcast's
possession."  Opp. at 13; *see also id.* at 22 n.6 (claiming that "[f]urther evidence
regarding the conspiracy between Baker and Comcast will be revealed in discovery").
Plaintiffs have it exactly backwards.  As the Supreme Court held in *Iqbal*, "Rule
8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more
than conclusions."  556 U.S. at 678–79.  Indeed, the instant case is precisely the type
that the Supreme Court has expressly held should not proceed to discovery.  *See*
*Twombly*, 550 U.S. at 559 ("[I]t is only by taking care to require allegations that reach
the level suggesting conspiracy that we can hope to avoid the potentially enormous
expense of discovery in cases with no 'reasonably founded hope that the [discovery]
process will reveal relevant evidence' to support a [conspiracy] claim.").

## D. None Of The Allegations In The Complaint Plausibly Show Race Discrimination

Even accepting as true every genuine factual allegation in the Complaint—after
putting aside recitals of elements of the cause of action, conclusory statements, and
legal conclusions couched as factual allegations, *see Iqbal*, 556 U.S. at 678—Plaintiffs
have not come close to *plausibly* pleading any violation of 42 U.S.C. § 1981.

### 1. The Alleged Statement About Bob Johnson Does Not Plausibly Show A Policy Of Discrimination

Plaintiffs hope to survive their uphill battle against common sense—to plausibly
substantiate their far-fetched race discrimination claim—by repeatedly resorting to a
single factual allegation:  An (unknown) Comcast executive said, at some (unknown)
time, in some (unknown) context, that "[w]e're not trying to create any more Bob
Johnsons."  Compl. ¶ 15.  This statement does not say anything about *race* at all.
There is a huge disparity between what Plaintiffs allege was said and what they *wish*
had been said, namely that Comcast "does not want to create any more Black
billionaires, such as Bob Johnson," Opp. at 1; that Comcast would give "no more pay

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

16

Case 2:15-cv-01239-TJH-MAN

1  days for Black media entrepreneurs," *id.* at 5; and that Comcast "does not want to

2  facilitate the success of African American media entrepreneurs, like ESN's owner

3  Byron Allen," *id.* at 14.  Plaintiffs cannot convert the words they have alleged into

4  evidence of discrimination by speculatively editorializing them.

5         Moreover, Plaintiffs still have not alleged any details about this statement that

6  would be necessary for it to even arguably provide evidence of discrimination.  They

7  provide only the most general context for the statement, vaguely alleging that it was

8  made during "one of the many occasions when Entertainment Studios attempted to

9  contract with Comcast."  Compl. ¶ 15.  Plaintiffs do not allege that the statement was

10  made by a person "involved in the decision-making process" at Comcast, without

11  which the statement cannot be evidence of a corporate policy of discrimination.  *See*

12  *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (quotation

13  marks omitted).  Plaintiffs cannot justify their failure to provide this information on the

14  ground that it is not in their possession, *cf.* Opp. at 13; Plaintiffs know who made this

15  statement, and when.  Their refusal to plead these details only underscores the

16  statement's sheer lack of relevance to the allegations here.

17         Plaintiffs cite no case that opened the door to discovery on discrimination claims

18  based on such a flimsy and utterly non-probative factual allegation.  The statement

19  suggests, at most, that Comcast was not looking to enrich programmers who sought

20  carriage from it, which merely reflects a commonplace feature of *every* commercial

21  negotiation—negotiating parties do not ordinarily devote their efforts to maximizing

22  the *other side's* returns.  Plaintiffs certainly do not allege (nor could they plausibly

23  allege) that Comcast's carriage negotiations ordinarily are devoted to creating "more"

24  *white* "billionaires."  *Cf.* Opp. at 1.  The single anonymous statement that Plaintiffs

25  emphasize is hardly sufficient to state a plausible claim that, notwithstanding a

26  commitment in the MOU to increase carriage opportunities for African American-

27  owned content providers, and notwithstanding Comcast's multiple contracts with

28

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

17

Case 2:15-cv-01239-TJH-MAN

companies that have an African American identity, Comcast actually has a company-wide policy of discrimination against African Americans.

### 2.  Plaintiffs' Assertions About How The MOU Works "In Practice" Are Conclusory And Contrary To The Facts Alleged In The Complaint

Plaintiffs now concede that the MOU, on its face and by its terms, provides *additional* opportunities for African American content providers to contract for carriage with Comcast.  *See* Opp. at 20.  The MOU sets aside bandwidth for no fewer than four new networks "in which African Americans have a majority or substantial ownership interest."  Fuchs Decl., Ex. A at 9.  And it commits to adding those services "on commercially comparable and competitive terms to the carriage of the services by other distributors."  *Id.*  But, Plaintiffs say, the MOU "in reality" was used to mask discrimination in channel carriage.  The Complaint, however, lacks factual allegations that Comcast (1) engaged in any racial discrimination in channel carriage, or (2) attempted to use the MOU to mask that discrimination.

There is not a single fact in the Complaint that supports the contention that African American content providers who pursue carriage with Comcast fare worse than non-African American content providers.  Remarkably, Plaintiffs contend that they have plausibly shown discrimination under *Iqbal* by alleging that other channels with a different racial identity were treated more favorably, yet deny that they are obligated to plead any facts at all about what made those other channels similarly situated.  *See* Opp. at 16–19.  That is not the law.  If Plaintiffs wish to rely on supposed comparators to state a plausible claim for discrimination, then they must plead facts to show that other channels are actually similarly situated.  *See* Mot. at 25–27.

The Complaint does not even attempt to allege facts establishing that Comcast refuses to do business with African American content providers.  Instead, Plaintiffs limit themselves to the contrived category of 100% African American-owned content providers.  But Plaintiffs may not invent their own racial-identity class for purposes of federal civil rights law.  Moreover, the Complaint itself acknowledges that Comcast

1    contracts for carriage with the Africa Channel, which (even on Plaintiffs' newly-

2    minted typology) is "100% African American-owned."  Compl. ¶ 7.  Plaintiffs attempt

3    to dismiss this critical fact—which runs directly contrary to their theory that Comcast

4    refuses to contract with 100% African American-owned media companies—because

5    the Africa Channel is allegedly owned by a "*former* Executive Vice President and

6    Chief Diversity Officer of Comcast/NBC-Universal."  *Id.* (emphasis added).[4]  Yet

7    Plaintiffs allege no facts to suggest that the Africa Channel obtained carriage with

8    Comcast only because of this connection, let alone facts to suggest that African

9    American-owned media companies *must* have similar "insider" connections in order to

10   successfully license their content to Comcast.

11         Plaintiffs also claim that "Comcast's contracting policies" had a "'disparate,

12   incidental impact' on African American-owned media companies," and point to the

13   Complaint's allegations regarding the amount of money Comcast spends overall to

14   license content from 100% African American-owned media companies.  *See* Opp. at

15   13 (citing Compl. ¶¶ 4, 7, 18, 28, 102, 104).  But the amount of money that Comcast

16   spends to license content from 100% African American-owned media companies does

17   not show any disparate racial impact because it says nothing about African American

18   companies more broadly.  And even if Plaintiffs had actually alleged the aggregate

19   amount spent by Comcast on content from African American-owned media companies,

20   that would not establish disparate impact in the absence of allegations regarding how

21   many qualified African American content providers (as opposed to non-African

22   American content providers) have pursued carriage and been denied.

23

24   _____

25   [4]  Plaintiffs' Opposition distorts this allegation by suggesting that the ownership of
     the Africa Channel by an allegedly former Comcast employee means that it is one
26   of Comcast's "own channels" in which it "has a stake."  Opp. at 6.  There are no
     allegations in the Complaint that Comcast has any ownership interest in the Africa
27   Channel.  *See* Compl. ¶ 7.

28

1    Plaintiffs further contend that ESN was relegated to a "separate, but not equal,

2    process for 100% African American-owned channels."  Opp. at 8 (citing Compl. ¶¶ 10,

3    78, 84).  But the Complaint shows that ESN was asked to apply for carriage through

4    the MOU process only *after* its proposal for carriage outside that process was

5    considered and rejected.  In other words, although Comcast initially declined to license

6    ESN's content, it pointed out the MOU to ESN as an *additional* opportunity to be

7    considered for carriage that would not be available to others.

8    The Complaint also contains no facts regarding how the purportedly "separate"

9    MOU process was in any way "not equal" to the standard process for obtaining

10   carriage with Comcast.  The MOU on its face demonstrates that to the extent its

11   process could be considered "not equal" to the standard process, it is only in the fact

12   that the MOU provides an additional benefit to content providers with majority or

13   substantial African American ownership:  a guarantee of carriage for four networks.

14   *See* Fuchs Decl., Ex. A at 9.  Plaintiffs do not allege that there is any similar guarantee

15   in the supposedly more favorable standard process.  Moreover, nothing in the MOU

16   purports to establish a maximum number of African American-owned networks that

17   Comcast will license, and carriage is available outside the MOU process, as the Africa

18   Channel demonstrates.

19   While Plaintiffs do allege that networks licensed by Comcast under the MOU

20   are given "inferior contracting terms" than "White"-owned networks, Compl. ¶ 11, this

21   is nothing more than an unadorned recital of an element of Plaintiffs' § 1981 claim that

22   is not entitled to the presumption of truth.  *See Iqbal*, 556 U.S. at 678–79.  Plaintiffs do

23   not plead any facts to support this conclusory assertion, such as facts establishing that a

24   network licensed through the MOU process received less favorable carriage terms than

25   a *similarly situated* network that was licensed outside of the MOU.  In short, no *facts*

26   alleged in the Complaint provide any reason to doubt that networks licensed under the

27   MOU process received anything less than comparable treatment.  *Cf.* Fuchs Decl., Ex.

28

1    A at 9 (guarantee in the MOU of "commercially comparable and competitive terms to

2    the carriage of the services by other distributors").

3           Finally, Plaintiffs contend that Comcast has failed to live up to its diversity

4    commitments in the MOU, and assert that this failure shows that Comcast has engaged

5    in international race discrimination.  Opp. at 15.  But Plaintiffs never explain how

6    Comcast's alleged failure to live up to its MOU commitments, which were not focused

7    specifically on ESN or 100% African American-owned media companies, could

8    possibly be considered evidence of discrimination against ESN.  In any event, as with

9    Plaintiffs' other contentions, the Complaint lacks the necessary factual allegations

10   required to substantiate this flawed theory.  Plaintiffs suggest that because they have

11   alleged that the networks selected through the MOU process "are actually majority

12   owned and controlled by white-owned businesses," Compl. ¶ 21, this means that

13   Comcast has breached the MOU.  On its face, however, the MOU commits Comcast to

14   adding networks in which African Americans "have a majority or *substantial*

15   ownership interest," Fuchs Decl., Ex. A at 9 (emphasis added), and thus the

16   Complaint's allegations of non-African American majority ownership are in no way

17   inconsistent with the MOU commitment.  Further, Plaintiffs have not alleged any

18   details about the African American-ownership of the two MOU networks that might

19   show such ownership was not "substantial."  Rather, Plaintiffs resort to labeling these

20   African American owners "token fronts" and "window dressing."  Compl. ¶ 21.  But

21   *Twombly* and *Iqbal* require the pleading of *facts*, not vague, pejorative labels.

22   **E.    Plaintiffs Have Failed To Allege Any Plausible Conspiracy Claim**

23          Plaintiffs do not dispute that their conspiracy claims under 42 U.S.C. § 1985(3)

24   must be dismissed unless they have stated an underlying violation of § 1981.  *See* Mot.

25   at 38; *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  Thus,

26   because Plaintiffs have failed to plausibly allege a violation of § 1981, the Court can

27   and should dismiss Plaintiffs' conspiracy claims under § 1985(3) on this basis.  *See*

28

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker                21                Case 2:15-cv-01239-TJH-MAN

1  *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 523–24 (9th Cir. 1994) (per

2  curiam).  In any event, Plaintiffs' bare-bones and conclusory allegations of conspiracy

3  are woefully insufficient to support a claim that respected civil rights advocates and a

4  high-ranking government official conspired with a public corporation to intentionally

5  discriminate against African Americans.

6      As clarified by Plaintiff's Opposition, the Complaint's *entire* body of allegations

7  against the civil rights advocates is that they: (1) received financial contributions from

8  Comcast surrounding the creation of the MOU, Opp. at 21–22; and (2) have "done

9  nothing" to "take issue with Comcast's blatant breach of the MOU," *id.* at 23.  Against

10  Ms. Baker, Plaintiffs say only that she (1) voted in favor of the

11  Comcast/NBCUniversal transaction despite Comcast's supposed failure to contract for

12  carriage with African American-owned media, *id.* at 23; and (2) took a position at

13  Comcast after leaving government service, *id.* at 22–23.  These scant facts do not come

14  anywhere close to plausibly alleging a conspiracy to do anything, much less one to

15  engage in racial discrimination against ESN.

16      With respect to the civil rights advocates, Plaintiffs acknowledge that the

17  MOU's terms on their face *benefited* African Americans, including content providers

18  in which African Americans have a majority or substantial ownership interest.  *See*

19  Opp. at 19–20.  Instead, Plaintiffs' conspiracy theory is premised on the existence of a

20  *separate*, secret agreement among Comcast and NUL, the NAACP, NAN, and

21  Rev. Sharpton to facilitate Comcast's supposed discrimination through the "sham" of

22  the MOU by *inaction—i.e.*, by supposedly "do[ing] nothing."  Opp. at 7, 23.  But

23  beyond the "bare assertion of conspiracy," *Twombly*, 550 U.S. at 556, the Complaint

24  contains no factual allegations supporting the existence of such an agreement, such as

25  when and where it was formed, and its scope and terms.  While Plaintiffs claim they

26  have alleged "an express, written agreement among the co-conspirators," Opp. at 22,

27  the only such agreement alleged is the MOU itself, which they admit on its face shows

28

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

22

Case 2:15-cv-01239-TJH-MAN

1   the opposite of an intent to discriminate, and thus it cannot possibly constitute any

2   evidence of an illegal conspiracy.

3          Plaintiffs further assert that the civil rights advocates' supposed lack of

4   enforcement of the MOU commitments shows a conspiracy.  This argument fails for

5   several reasons.  First, mere *inaction*—particularly here, where the civil rights

6   advocates were under no duty to act—is not enough to state a claim under 42 U.S.C.

7   § 1985(3), as an "overt act in furtherance of the conspiracy" is an essential element

8   that must be alleged.  *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir.

9   2008); *see also, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *Savage v.*

10  *City of Berkeley*, No. 05-02378, 2007 WL 911868, at *10 (N.D. Cal. Mar. 23, 2007).

11         Second, as discussed above, Plaintiffs have not alleged any "blatant breach of

12  the MOU," and thus they necessarily have failed to allege that the civil rights

13  advocates have failed to enforce the terms of the MOU.  The MOU's programming

14  commitments were focused on adding networks that had "majority or *substantial*"

15  African American ownership, Fuchs Decl., Ex. A at 9 (emphasis added), and Plaintiffs'

16  allegations that the first two networks selected pursuant to the MOU were "backed" or

17  "majority owned" by non-African Americans is in no way inconsistent with this

18  commitment.

19         Third, any failure to comply with diversity commitments would not, without

20  more, establish racial discrimination—much less a conspiracy to discriminate.

21  Diversity outreach efforts are permitted by law, but an absence of such efforts does not

22  establish intentional racial discrimination.  Indeed, if the MOU never had been signed,

23  that fact would not establish that anyone had discriminated against ESN.

24         Finally, even if Plaintiffs had properly alleged a breach of the MOU (they have

25  not), that fact alone would not support the conclusion that there was a conspiracy

26  between Comcast and NUL, the NAACP, NAN, and Rev. Sharpton.  Rather, there are

27  numerous obvious, non-conspiratorial reasons that any breach of the MOU may have

28

Gibson, Dunn &
Crutcher LLP

Reply Memo ISO Motion to Dismiss Plaintiffs'
Complaint by Defendants Comcast, NAACP, NUL,
Sharpton, NAN, and Baker

23

Case 2:15-cv-01239-TJH-MAN

been excused by the signatories, such as a belief that future diversity commitments were more likely to be achieved if the organizations continued to work with Comcast rather than accuse it of breaching the MOU, or simply that resources did not warrant enforcing the breach.  And because Plaintiffs' Complaint contains no facts "tending to exclude" any of these numerous obvious alternative explanations, it has failed to plausibly allege any conspiracy.  *Century Aluminum*, 729 F.3d at 1108.

With respect to Ms. Baker, Plaintiffs concede that "Comcast and Baker may not have reduced their agreement to writing," but suggest their allegation that "Baker received a substantial pay bump by taking on an executive position at Comcast" is enough—without more—to "raise[ ] a plausible inference of a conspiracy between Comcast and Baker."  Opp. at 22.  Of course, the fact that a senior government official allegedly received a substantial increase in income by going from government service to private industry is not extraordinary, and does not ("plausibly" or otherwise) raise any "inference" of wrongdoing absent other facts.  Plaintiffs also suggest that a conspiracy existed because Ms. Baker had recently voted in favor of the Comcast/NBCUniversal transaction despite "Comcast's well-documented failure to contract for carriage with African American-owned media companies."  Opp. at 23.  But Plaintiffs themselves allege that Comcast carried the Africa Channel, a 100% African American-owned channel, *see* Compl. ¶ 7, which contradicts their assertion of a "well-document failure."  And in any event, there are no facts alleging that *Ms. Baker* was aware of this supposedly "well-documented failure," or that she intentionally ignored that "failure" in order to conspire with Comcast to discriminate on the basis of race.  At best, these alleged facts "do not permit the court to infer more than the mere possibility of misconduct," which is insufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.

1

## CONCLUSION

2      The Court should dismiss with prejudice all claims against Defendants NUL, the

3  NAACP, NAN, Rev. Sharpton, and Ms. Baker for lack of personal jurisdiction.  The

4  Court should also dismiss with prejudice all claims against Ms. Baker on the ground of

5  immunity.  As to all Defendants, the Court should dismiss all claims with prejudice for

6  failure to state a claim for relief.

7

8  DATE:  May 22, 2015                 GIBSON, DUNN & CRUTCHER LLP

9

10                            By:   /s/ Miguel A. Estrada

11                                  MIGUEL A. ESTRADA
                                    DOUGLAS FUCHS
12                                  JESSE A. CRIPPS
                                    BRADLEY J. HAMBURGER
13                                  MICHAEL R. HUSTON

14

15                                  Attorneys for Defendants
                                    COMCAST CORPORATION; NATIONAL
16                                  ASSOCIATION FOR THE ADVANCEMENT
                                    OF COLORED PEOPLE; NATIONAL
17                                  URBAN LEAGUE, INC.; AL SHARPTON;
                                    NATIONAL ACTION NETWORK, INC.;
18                                  MEREDITH ATTWELL BAKER

19

20

21                                  PATTERSON BELKNAP WEBB
                                    & TYLER LLP
22

23                                  PETER C. HARVEY

24

25                                  Attorneys for Defendant
                                    NATIONAL URBAN LEAGUE, INC.

26

27

28