**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 19 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL ASSOCIATION OF AFRICAN AMERICAN-OWNED MEDIA, a California limited liability company; ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> COMCAST CORPORATION, a Pennsylvania corporation, <br><br> Defendant-Appellee. | No.   16-56479 <br><br> D.C. No. 2:15-cv-01239-TJH-MAN <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted October 9, 2018
Pasadena, California

Before: SCHROEDER, M. SMITH, and NGUYEN, Circuit Judges.

Plaintiffs-Appellants National Association of African American-Owned

Media (NAAAOM) and Entertainment Studios Networks, Inc. (Entertainment

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Studios, and together with NAAAOM, Plaintiffs) appeal the district court's dismissal under Rule 12(b)(6) of their second amended complaint (SAC).  We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

  Entertainment Studios, an African American-owned operator of television networks, sought for more than a decade to secure a carriage contract from Defendant-Appellee Comcast Corporation (Comcast), the largest cable television-distribution company in the United States.  These efforts were unsuccessful, and Plaintiffs filed suit, claiming that Comcast's refusal to contract was racially motivated and in violation of 42 U.S.C. § 1981.  The district court thrice dismissed Plaintiffs' complaints, concluding in its third and final dismissal order that "not one fact added to the SAC is either antithetical to a decision not to contract with [Entertainment Studios] for legitimate business reasons or, in itself, indicates that the decision was racially discriminatory."

1. We conclude that the district court improperly dismissed Plaintiffs' SAC.  As discussed at length in the contemporaneously filed opinion in *National Association of African American-Owned Media v. Charter Communications, Inc.*, No. 17-55723, to prevail in a Rule 12(b)(6) motion on their § 1981 claim, Plaintiffs needed only to plausibly allege that discriminatory intent was a factor in Comcast's refusal to contract, and not necessarily the but-for cause of that decision.  Here, Plaintiffs' SAC includes sufficient allegations from which we can plausibly infer

that Entertainment Studios experienced disparate treatment due to race and was thus denied the same right to contract as a white-owned company, which violates § 1981.  *See* 42 U.S.C. § 1981(a) ("All persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .").  These allegations include: Comcast's expressions of interest followed by repeated refusals to contract; Comcast's practice of suggesting various methods of securing support for carriage only to reverse its position once Entertainment Studios had taken those steps; the fact that Comcast carried every network of the approximately 500 that were also carried by its main competitors (Verizon FIOS, AT&T U-verse, and DirecTV), *except* Entertainment Studios' channels; and, most importantly, Comcast's decisions to offer carriage contracts to "lesser-known, white-owned" networks (including Inspirational Network, Fit TV, Outdoor Channel, Current TV, and Baby First Americas) at the same time it informed Entertainment Studios that it had no bandwidth or carriage capacity.[1]

---

[1] Comcast argues, and the district court concluded, that Plaintiffs' SAC failed to adequately plead that these other, white-owned channels were similarly situated to Entertainment Studios' networks.  However, an extensive comparison of these channels for purposes of determining disparate treatment due to race would require a factual inquiry that is inappropriate in a 12(b)(6) motion.  *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114–15 (9th Cir. 2011) (describing the fact-intensive, context-dependent analysis needed to determine whether individuals are similarly situated in the related context of employment discrimination).  At this stage, we must instead accept as true Plaintiffs' allegations that lesser-known, white-owned channels secured carriage at the same time that Comcast refused to contract with Entertainment Studios.

Although Comcast notes that legitimate, race-neutral reasons for its conduct are contained within the SAC, when considered in the light most favorable to Plaintiffs, we cannot conclude that these alternative explanations are so compelling as to render Plaintiffs' theory of racial animus implausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

We can infer from the allegations in the SAC that discriminatory intent played at least some role in Comcast's refusal to contract with Entertainment Studios, thus denying the latter the same right to contract as a white-owned company. Accordingly, Plaintiffs stated a plausible claim pursuant to § 1981, and their SAC should not have been dismissed under Rule 12(b)(6).

2.   For the reasons discussed at length in our opinion in *Charter Communications*, we also conclude that the First Amendment does not bar Plaintiffs' § 1981 claim.

3.   Because we reverse the district court's dismissal of Plaintiffs' SAC, we need not consider whether the court abused its discretion when it denied Plaintiffs further leave to amend.

4.   We deny Plaintiffs' motion to take judicial notice.

**REVERSED AND REMANDED.**